UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 10-21636 CV HUCK/O'SULLIVAN

ROSEMARIE HERNANDEZ,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES LTD.,
a Liberian corporation,

    Defendant
_____/

## DEFENDANT ROYAL CARIBBEAN CRUISES LTD.'S
## MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Defendant Royal Caribbean Cruises Ltd. ("Royal Caribbean") moves for the entry of an Order disqualifying the attorneys for Plaintiff from continuing to represent Plaintiff in this action due to the prior representation of Royal Caribbean by one of them in substantially related matters. The grounds for this Motion are:

### INTRODUCTION & FACTUAL BACKGROUND

The incident that allegedly gives rise to this action is a slip and fall accident that occurred on or about June 14, 2009 while Plaintiff was a passenger aboard Royal Caribbean's cruise ship the M/S Liberty of the Seas. *See* Pl.'s Compl. at ¶¶ 6, 9. Plaintiff alleges that she injured herself when she "slipped and fell in a puddle of water at the bottom" of stairs she was descending. *Id*. Plaintiff seeks damages from Royal Caribbean under a claim for "negligence" (Count I).

In support of her claims, Plaintiff generally alleges, among other things, that Royal Caribbean owed Plaintiff a duty to: a) use reasonable care in maintaining the premises of the M/S Liberty of the Seas in a reasonably safe condition and operating the vessel in a reasonably safe

manner. *Id.* at ¶ 8. Plaintiff further alleges that Royal Caribbean knew or should have known of the dangerous and unsafe condition of the stairs and deck, and failed to take reasonable steps to correct the dangerous condition and/or warn Plaintiff of the alleged conditions. *Id.* at ¶¶ 10, 11.

James Walker initially was the only attorney representing Plaintiff in this action. Subsequently, Jonathan Aronson appeared as co-counsel for Plaintiff. As described in the Declaration of Salvatore A. Faso II, Royal Caribbean's Director, Guest and Employee Legal Services (the "Faso Decl.") (attached as Exhibit A), from before 2000 through 2009, Aronson represented Royal Caribbean as a defense counsel in nearly 300 legal claims, including 172 legal claims made by passengers against Royal Caribbean, which are "substantially related" to this case. *See* Faso Decl., ¶4.

Royal Caribbean is currently and actively involved in litigating three actions in which Aronson previously represented Royal Caribbean (though he is no longer involved in those actions). *See* Faso Decl., ¶5. In one of those actions, *Querobino D'Souza v. Royal Caribbean*, Walker represented the plaintiff while Aronson represented Royal Caribbean. *See id.*

Aronson and Walker should be disqualified as Plaintiff's counsel due to an irrefutable conflict of interest.

## ARGUMENT

**1.    Aronson's Previous Representation of Royal Caribbean Warrants His Disqualification As Counsel for Plaintiff.**

Rule 4-1.9 of the Rules Regulating the Florida Bar strictly forbids an attorney from representing a client when a conflict of interest arises between that client and a former client. The Rule provides in pertinent part:

> A lawyer who has formerly represented a client in a matter shall not thereafter:

2

>(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or
>
>(b) use information relating to the representation to the disadvantage of the former client.

Rules Regulating the Florida Bar, Rule 4-1.9.

To prevail on a motion to disqualify a lawyer under Rule 4-1.9, the movant must establish: a) the existence of a prior attorney-client relationship, which gives rise to an irrefutable presumption that confidences were disclosed during the relationship[1]; and b) that the issues pending in the current action are the same as or substantially related to the matters in which the lawyer previously represented the movant. *See Cox v. American Cast Iron Pipe Co.*, 847 F.2d 725, 728 (11th Cir. 1988); *see also State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630, 633 (Fla. 1991).

Attorneys must "avoid even the appearance of professional impropriety," and "any doubt is to be resolved in favor of disqualification." *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d at 633. To that end, it is the "duty" of courts "to not only dispense justice, but, equally as important, to maintain the integrity of the judicial system…[t]he public's trust and confidence in the system is essential to the ability of the system to function efficiently and justly." *McPartland v. ISI Inv. Services, Inc*. 890 F.Supp. 1029, 1032 (M.D. Fla. 1995).

In the context at issue here – confidences gained during the prior representation of a current party opponent – "our legal system cannot function fairly or effectively if an attorney has

---

[1] "The presumption is irrefutable because it is difficult to establish that confidences were actually disclosed to an opponent, and because such a situation is 'rife with the possibility of discredit to the bar and the administration of justice.'" *Estate of Jones v. Beverly Health and Rehabilitation Services, Inc.*, 68 F.Supp.2d 1304, 1308-09 (N.D. Fla. 1999) citing *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d at 634. Additionally, "the presumption avoids compelling the former client to prove the very things that he seeks to keep confidential." *In re Corrugated Container Antitrust Litigation*, 659 F.2d 1341, 1346 (5th Cir. 1981)(applying Florida rule).

an informational advantage in the form of confidences gained during a former representation of his client's current opponent." *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d at 633; *see also Ford v. Piper Aircraft Corp.*, 436 So. 2d 305, 307 (Fla. 5th DCA 1983) (stating that "[t]he obligation of an attorney to preserve the confidences and secrets of a client lies at the very foundation of the attorney-client relationship.  An attorney is forbidden to use a confidence or secret of a client to the client's disadvantage or to use a confidence or secret, absent informed consent by the client, for the attorney's own benefit or the benefit of a third person."); *see also Jenkins v. Harris Ins., Inc.*, 572 So. 2d 1011 (Fla. 1st DCA 1991) (holding that a party may seek disqualification if an attorney had access to any information during the former representation that would disadvantage the defendants in the current action.).

Each element necessary for the disqualification of Aronson is satisfied here.

A. *A Prior Attorney-Client Relationship Existed Between Aronson and Royal Caribbean.*

The first element for disqualification under Rule 4-1.9 is whether an attorney-client relationship exists.  This element is satisfied here.  From before 2000 through 2009, Aronson served as defense counsel to Royal Caribbean in almost 300 legal claims.  *See* Faso Decl., ¶4.  In fact, Royal Caribbean has prepared a report that identifies all of the former cases in which Aronson represented Royal Caribbean or its wholly-owned subsidiary, Celebrity Cruises.  A copy of this report will be available for *in camera* inspection upon the entry of a suitable protective order.

During the course of his attorney-client relationship with Royal Caribbean, Aronson was privy to and had unfettered access to the secrets and confidences of Royal Caribbean's in-house legal counsel, adjusters, and employees.  He had access to privileged files containing attorney-client correspondence, policies, procedures and practices, and confidential and proprietary

4

information and records (copies of which Aronson likely still possesses), none of which he would have been able to access but for his representation of Royal Caribbean. *See* Faso Decl., ¶6.

Aronson has intimate knowledge of Royal Caribbean's confidential information related to its handling of slip and fall claims including, but not limited to: a) which experts Royal Caribbean uses; b) the processes that Royal Caribbean employs to arrange for medical care for its passengers; c) internal and external factors that increase the difficulty in defending such claims; d) Royal Caribbean's internal claims handling procedures; e) Royal Caribbean's approach to settlement; f) identification of potential deficiencies in Royal Caribbean's case; and g) remedial actions suggested by Royal Caribbean's inside counsel to Aronson that should take place aboard Royal Caribbean's vessels. *See* Faso Decl., ¶7. Aronson also was in contact with Royal Caribbean's litigation director, who communicates case evaluations and strategies to Royal Caribbean's in-house and outside litigation attorneys. *See id.*

Put simply, as Royal Caribbean's attorney, Aronson was given Royal Caribbean's playbook. *See id.*, ¶8

Aronson's knowledge of that confidential and secretive information does not fall under the category of information that any "reasonably prudent lawyer" who had not previously represented Royal Caribbean would "obtain by virtue of filing suit" against Royal Caribbean and conducting discovery. *See Morgan Stanley & Co. v. Solomon*, 2009 WL 413519 *6 (S.D. Fla. 2009)

In Florida, "the need to protect the integrity of loyalty to a client is predicated upon removing instances which would cause apprehension in a client's expectation of confidences." *Outdoor Products Corp. v. Harpley*, 183 B.R. 645, 649 (M.D. Fla. 1995). The extensive

5

knowledge and access to confidential records that Aronson acquired in his capacity as Royal Caribbean's attorney provides Plaintiff with an unfair tactical advantage.

Because of the attorney-client relationship between Royal Caribbean and Aronson, and because that relationship centered on numerous matters substantially similar and related to the instant matter, Aronson cannot represent Plaintiff in this matter and should be disqualified.

> B.   *This Action Is Substantially Related to Numerous Matters In Which Aronson Represented Royal Caribbean.*

The second element focuses upon whether this action is "substantially related" to actions in which Aronson previously represented Royal Caribbean.  To establish that this action and the prior actions are "substantially related," the moving party must demonstrate "the relationship between the subject matter, issues and causes of action of the present and previous representations."  *Contant v. Kawasaki Motors Corp.*, 826 F.Supp. 427, 429 (M.D. Fla. 1993).  Further, to be "substantially related," the matters "need only be akin to the present action in a way reasonable persons would understand as important to the issues involved." *McPartland v. ISI Inv. Services, Inc.*,  890 F.Supp. at 1032; *see also In re Outdoor Products, Corp.*, 183 B.R. 645, 649 at n. 5 (Bankr. M.D. Fla. 1995) (the term "substantially related" refers to whether the prior matter "coalesce with" the current matters).

For example, in *Estate of Jones*, the court disqualified the plaintiff's attorney after determining that a nursing home case in which the attorney formerly represented the defendant's subsidiary was "substantially related" to a nursing home case against the company.  68 F.Supp.2d at 1310.  The court acknowledged that while the allegations in nursing home cases tend to be uniform, and although "the facts and circumstances surrounding the death of a patient may differ," these types of cases "invariably will focus on staffing, supervision, training and operating policy issues." *Id.* at 1310.  The court further held that it was "not unreasonable to

6

conclude" that information learned in the previous case in which the lawyer represented the defendant would be relevant to the lawyer's prosecution of the case against his former client. *Id*. In reaching this holding, the court relied upon the affidavit of the plaintiff's lawyer's former partner (and co-counsel on the previous case on behalf of the defendant), which stated:

> there is an informational advantage to [the plaintiff's lawyer] in the instant case because of [plaintiff's lawyer's] knowledge of [former client's] corporate posture regarding its defense of nursing home claims, its tactics with regard to the defense of these types of claims and its corporate position regarding their approach to settlement, all of which were learned by [plaintiff's lawyer] during his prior representation [of the defendant].

*Id.* at 1310-11.

In *Contant v. Kawasaki Motors Corp.*, a products liability action, the court disqualified the plaintiff's attorney due to his former representation of the defendant in a matter "substantially related" to the matter pending before the court. 826 F. Supp. at 428. The court emphasized that "the attorney-client privilege must not be taken lightly…[s]hould the public no longer feel the ability to confide in members of the bar, our judicial system would not be able to function as we know it today." *Id*. at 429.

The court determined that the plaintiff's attorney was "made privy to information he would not have received but for the fact that he represented the [d]efendant." *Id*. The defendant argued, and the court agreed, that the attorney became aware of practices used by the defendant in fighting a products liability action, and that much of the information was confidential attorney-client information that the attorney would not have known but for his representation of the defendant. The court noted that an "outside attorney, having never before been associated with the Defendants, would not have the same intimate knowledge of [the defendant] as [plaintiff's counsel] has." *Id*.

7

*Lasslett v. Metropolitan Life Ins. Co.*, involved an ERISA benefits claim in which the plaintiff's attorney previously represented the defendant in the defense of numerous other ERISA claims.  2004 WL 2037096 (M.D. Fla. 2004).  The court, relying upon Rule 4-1.6 of the Florida Rules of Professional Conduct, disqualified plaintiff's attorney on the grounds that for many years an attorney-client relationship existed with the defendant, and thus an irrebuttable presumption arose that pertinent confidential information was disclosed to the plaintiff's attorney. *Id*.  The court further emphasized that during the course of the defendant's relationship with the plaintiff's attorney, the defendant expected its internal procedures and litigation strategies to remain confidential and not become generally known. *Id*. The court held that given the plaintiff's attorney's "extensive access to [the defendant's] highly confidential claims handling and litigation procedures, the representation of the [plaintiff] against [the defendant] clearly gives rise to an appearance of impropriety." *Id*.

Here, the disputed issues raised in Plaintiff's Complaint, among other things, are whether Royal Caribbean used reasonable care in maintaining the M/S Liberty of the Seas in a reasonably safe condition and operating the vessel in a reasonably safe manner; whether Royal Caribbean knew or should have known of the allegedly dangerous and unsafe conditions on the vessel; whether Royal Caribbean adequately maintained the stairs and deck for use by passengers by properly testing, cleaning and repairing the stairs and deck; whether Royal Caribbean used appropriate materials in and about the stairs and deck; whether Royal Caribbean adequately investigates prior and subsequent incidents involving similar circumstances on the M/S Liberty of the Seas and other vessels in its fleet; whether Royal Caribbean posted adequate warnings to passengers regarding the alleged dangerous condition; whether Royal Caribbean provided a drain

which was properly designed and functioning; and whether Royal Caribbean provided an appropriately designed handrail.

Those issues are not only substantially related to the subject matter of Aronson's previous representation of Royal Caribbean, they are the same issues about which Aronson previously represented Royal Caribbean. Although the specific facts and circumstances of Plaintiff's claims against Royal Caribbean may not be identical to the facts and circumstances in the cases in which Aronson defended Royal Caribbean, all of the cases, including this matter, focused or will focus on Royal Caribbean's policies and procedures related to safety, maintenance, operation and control of its vessels, and the remedial measures Royal Caribbean employs to address hazards on its vessels. *See Estate of Jones v. Beverly Health and Rehabilitation Services, Inc.*, 68 F.Supp.2d at 1308-09.

As attorney for Royal Caribbean in matters substantially related to this case, Aronson was entrusted with Royal Caribbean's confidences and secrets, which undoubtedly could be used by Aronson for the benefit of Plaintiff in this lawsuit – and to the detriment of Royal Caribbean. Aronson would not have known that information had he not been counsel for Royal Caribbean. Florida law does not permit such tactics.

**2.     Disqualification of Walker Is Also Warranted.**

As shown above, Aronson, while serving as counsel for Royal Caribbean, had access to confidential information that gives him an unfair advantage in this action. Given Aronson's active participation in this matter, there can be no doubt that Royal Caribbean's confidential information and confidences have and will be shared with Walker, who is working closely alongside Aronson.

9

As a general rule, a court will impute disqualification between independent firms only where there is more than a small actual risk of confidential information spreading from the primarily-conflicted attorney to the associating firm.  *See Baybrook Homes, Inc. v. Banyan Const. & Development, Inc.*, 991 F.Supp. 1440, 1446 (M.D. Fla. 1997) citing *Restatement (Third) of the Law Governing Lawyers* § 203 comment (c)(iii) (Proposed Final Draft No. 1, 1996).

Here, there unquestionably is more than a small actual risk of confidential information spreading from Aronson to Walker.  As discussed above, Aronson was and still is privy to the secrets and confidences he acquired while representing Royal Caribbean – information that makes Aronson an invaluable addition to Walker's legal team on behalf of Plaintiff.  It appears the only reason Aronson was brought into the suit was due to his inside knowledge; there simply is no other reason for him to have been brought in.

WHEREFORE, Royal Caribbean Cruises Ltd. respectfully requests the entry of an Order disqualifying Jonathan B. Aronson and James M. Walker, and their law firms from continuing their representation of Plaintiff in this action.

Respectfully submitted,

**HOLLAND & KNIGHT LLP**

/s/ Sanford L. Bohrer
Sanford L. Bohrer (FBN 160643)
Email: sbohrer@hklaw.com
Scott D. Ponce (FBN 0169528)
Email: sponce@hklaw.com
Eric L. Ray (FBN 0029418)
Email: eric.ray@hklaw.com
701 Brickell Avenue, Suite 3000
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 2, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I ALSO CERTIFY that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

/s/Sanford L. Bohrer

## SERVICE LIST
## CASE NO.  10-CV-21636-HUCK/O'SULLIVAN

James M. Walker, Esquire
jwalker@cruiselaw.com
Walker & O'Neill, P.A.
Plaza 57, Suite 430
7301 S.W. 57th Court
South Miami, Florida Court
Phone: (305) 995-5300
Fax: (305) 995-5310
*Attorneys for Plaintiff*
Via CM/ECF

Jonathan B. Aronson, Esquire
jaronson@aronsonlawfirm.com
ARONSON LAW FIRM
P.O. Box 565130
Miami, Florida 33256
Phone: (305) 665-8626
Fax: (305) 665 3429
*Attorneys for Plaintiff*
Via CM/ECF

Randy S. Ginsberg, Esquire
rginsberg@rccl.com
Royal Caribbean Cruises Ltd.
1050 Caribbean Way
Miami, Florida 33132
Phone:  (305) 539-6000
Fax:  (305) 539-8101
*Attorneys for Defendant*
Via CM/ECF

Curtis J. Mase
cmase@mletrial.com
Mase Lara Eversole, P.A.
2601 S. Bayshore Drive
Suite 800
Miami, Florida 33133
Phone: (305) 377-3770
Fax: (305) 377-0080
*Attorneys for Defendant*
Via CM/ECF

# 9580067_v1