UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  10-21636-CIV-Huck/O'Sullivan

ROSEMARIE HERNANDEZ,

      Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

      Defendants.

_____ /

**Aronson's Consolidated Motion to Strike Royal Caribbean's Amended Motion for
Disqualification and Response on the Merits**

### Introduction

Royal Caribbean's Amended Motion for Disqualification, in addition to being both
factually and legally unsustainable, was submitted to this Court in open defiance of the Local
Rules and this Court's prior orders.  As a consequence, the motion should be stricken from the
docket. Assuming that the Court is inclined to overlook Royal Caribbean's transgressions, the
Motion constitutes little more than a transparent attempt to pigeonhole its prior— and admittedly
erroneous — motion into the facts of *Tuazon v. Royal Caribbean Cruises Lines, Ltd.*[1] The latest
motion should be summarily denied.

Three issues are before this Court:

**Issue No. 1: Failure to Comply with Local Rule 7.1(a)(3) and Court order:** Parties
filing motions in this Court are required to certify their compliance with Local Rule 7.1(a)(3),
which requires a moving party to confer with their opposition in a good faith effort to resolve the
issues raised by the motion.  Despite  being ordered by this Court to confer with counsel  prior to

---

[1]       641 So. 2d 417 (Fla. 3d DCA 1994).

the filing of any amended motion to disqualify, Royal Caribbean <u>never</u> conferred with undersigned counsel; to the contrary, undersigned counsel was never favoured with a copy of the proposed "corrected"–now Amended–motion, before it was filed with the Court after business hours on Friday. Yet Royal Caribbean certified compliance with the Rule. The Court should therefore address whether Royal Caribbean's multiple violations warrant the striking of its motion for disqualification

**Issue No. 2: Risk of Confidential Information Exposure under Rule 4-1.9(b):**

Assuming that the Court determines to consider Royal Caribbean's latest Motion for Disqualification, the next issue which should be addressed by the Court involves the scope of Mr. Aronson's prior representation of Royal Carribean. More particularly, the Court must determine whether Royal Carribean has carried its burden of demonstrating that  Mr. Aronson obtained confidential information while he was serving as outside counsel for Royal Carribean that would otherwise be unobtainable by prudent counsel and which would prejudice Royal Carribean in the defense of the *Hernandez* claim.

**Issue No. 3: Substantial Relationship Under Rule 4-1.9(a):** A lawyer's representation of a client cannot be materially adverse to that of a   previous client in a substantially related matter.   "Substantially related" means either representation in the same transaction or representation which will necessarily require the attorney to attack his own prior work product. Although Aronson previously represented Royal Caribbean in many negligence cases, he never represented it in the *Hernandez* case or any negligence case involving Hernandez herself.  Given the circumstances, and the routine nature of the Hernandez negligence claim, the final question to be addressed by the Court concerns whether Royal Caribbean's Motion to Disqualify should be denied, given the fact that Mr. Aronson's appearance in this matter will not require him to

assault any of his own prior work product or services for Royal Carribean, and the cruise line's inability to articulate any specific "confidences" learned by Mr. Aronson during his representation that would reasonably–let alone necessarily–be called in to play in this case.

**Argument:**

I.   **Royal Caribbean has violated Local Rule 7.1(a)(3) and this Court's prior order, directing it to confer with Mr. Aronson and Mr. Walker prior to the filing of any amended motion; Docket Entry 49 and all of its attachments should be stricken or summarily denied.**

On June 28, 2010 Jonathan B. Aronson served a Notice of Appearance as co-counsel for Plaintiff, Rosemarie Hernandez.  Subsequent to filing the Notice of Appearance, Aronson served the Rule 26 Disclosure and Certificate of Interested Parties.  On July 2, 2010 Defendant Royal Caribbean Cruises, Ltd. through its former counsel, Holland & Knight, served a Motion to Disqualify Plaintiff's Counsel.[2]  On July 20, 2010 Aronson filed his Response to Royal Caribbean's Motion to Disqualify, through the undersigned attorneys, as counsel for Mr. Aronson alone. [3]

Holland & Knight's disqualification motion contained three arguments: (1) Aronson's prior representation of Royal Caribbean as a defense attorney in numerous crew and passenger claims was "substantially related" to his present representation of Rosemarie Hernandez in a slip-and-fall negligence case against Royal Caribbean[4]; (2) that Aronson  had access to confidential information that would prejudice Royal Caribbean[5]; and (3) James Walker should be

---

[2]       Docket Entry 18.

[3]       Docket Entry 31.

[4]       Docket Entry 18, pp. 6 – 8.

[5]       Docket Entry 18, pp. 4 – 6; Docket Entry 18 - 1.

disqualified by association with Aronson.[6]  As Aronson noted in his response, the Motion for Disqualification was legally and factually deficient, relied almost entirely on case law that predated significant amendments to the controlling rules of professional conduct, contained a lengthy discussion of a motion that counsel had represented to the court as being a trial court order, and was supported only by the mostly irrelevant declaration of Salvatore Faso.[7]

On July 29, 2010,  the day before its reply was due, Royal Caribbean served a Notice of Withdrawing Motion to Disqualify and Request for Leave to File "Corrected" Motion.[8]  At no time did Royal Caribbean provide a copy of the proposed "corrected" Motion.  Nor did the notice withdrawing the earlier Motion explain what error was to be corrected in the withdrawn motion. Viewed in context, it would appear that Royal Caribbean has effectively sought the equivalent of a legal "mulligan"[9] in response to Aronson's arguments opposing the original motion filed some two months ago.

On July 30, 2010, this Court entered an Order granting Royal Caribbean's Motion to File a Corrected Motion on or before August 6, 2010, stating that:

> Defendant's Counsel shall confer with Plaintiff's Counsel prior to filing any corrected Motion.  If Defendant files a corrected Motion to Disqualify, Plaintiff may, if appropriate, file a Motion for Fees and Costs incurred as the result of the first Motion to Disqualify.  In the future, counsel shall comply with all Local Rules and failure to do so will result in sanctions.[10]

---

[6]      Docket Entry 18, pp. 9 – 10.

[7]      Docket Entry 31.

[8]      Docket Entry 36.

[9]      *See Buckeye Retirement Co., LLC, Ltd. v. Crews*, 2007 WL 1970861, *3 , No. 3:07-cv-202-J-16, (M.D. Fla. July 3, 2007)(noting that a "mulligan is defined as a 'free shot sometimes given a golfer in informal play when the previous shot was poorly played.'"); *see also Ferguson v. U.S.*, 2007 WL 2263931, *2, No. 06-14085-CIV. (S.D. Fla. August 6, 2007).

[10]      Docket Entry 42.

Despite this admonishment,  Royal Caribbean  failed to comply with Local Rule 7.1 (a)(3) and this Court's order of July 30th.  Based upon Royal Caribbean's disregard of this Court's Order and the Local Rules, Royal Caribbean's First Amended Motion to Disqualify should either be stricken or summarily denied.

None of Royal Caribbean's platoon of attorneys made any effort to contact  the undersigned prior to service of the First Amended Motion to Disqualify to determine Mr. Aronson's position with regard to the Amended  Motion.  Of course, it would have been difficult for the undersigned to express any opinion whatsoever with regard to the relief sought, since he had no idea as to what that relief would be until the Amended Motion was actually filed at approximately 6 PM last Friday evening.

Counsel for Royal Caribbean represents in its Amended Motion to Disqualify Plaintiff's Counsel that: "Counsel for Plaintiff have indicated that they oppose the relief sought in this Motion."[11]  In fact, counsel for Royal Caribbean never contacted undersigned counsel before filing the Amended Motion. What is more troubling is that it appears that Royal Caribbean had secured the affidavits of Michelle Perez, Wendy Zepernick, and David Banciella several days prior to the filing of the First Amended Motion to Disqualify Plaintiff Counsel, yet apparently could not take the time to discuss those affidavits or even generally discuss their contents of the legal basis for the Amended Motion.

The undersigned's requests were never answered, as is confirmed by several emails between the parties.[12]  From the date Royal Caribbean withdrew its Motion and sought Leave to file a "corrected" Motion, Royal Caribbean never discussed the basis for the "corrected" motion

---

[11]     Royal Carribean's Amended Motion to Disqualify, p. 12.

[12]     See exhibit "A" to this motion.

with undersigned counsel.  Royal Caribbean has done exactly what this Court ordered it <u>not</u> to do and exactly what the Local Rules explicitly <u>prohibit</u>.  As a result, Royal Caribbean's Amended Motion for Disqualification should be denied.[13]

**II.      Aronson did not represent Royal Caribbean in any substantially related matter; nor did his prior representation give him access to confidential information not generally known or discoverable to a prudent attorney. Disqualification is unwarranted.**

Assuming this Court declines to strike Royal Carribean's amended motion for disqualification or to summarily deny it, the motion fails on the merits. As a prefatory matter, motions for disqualification are viewed with scepticism because disqualification impinges upon a party's right to employ their lawyer of choice, and such motions are often brought for tactical purposes.[14] Furthermore, because disqualification "strikes at the heart" of a client's right to choose their own attorney, it should be used only in extremely limited circumstances. [15]

This matter illustrates a textbook example of the tactical use of a motion for disqualification. Royal Caribbean has essentially abandoned it untenable argument that the *Hernandez* case is "substantially related" to Aronson's previous tenure as counsel for the Company, as defined by Rule 4-1.9(a). Instead, Royal Caribbean now strains it remaining credibility by advancing a tenuous argument which suggests that Aronson's role as an independently retained defense attorney was analogous to a Royal Caribbean claims adjustor because he had "unfettered access" to confidential information which was not generally known

---

[13]      *Paxton v. Great American Insurance Company*, 650 F Supp. 2d 1208 (S.D. Fla. 2009).

[14]      *Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London*, 911 So. 2d 155, 157 (Fla. 3d DCA 2005)(internal citations omitted).

[15]      *Id.*

or discoverable, violating Rule 4-1.9(b). For the reasons that follow, this Court should deny Royal Caribbean's motion for disqualification.

A.      **Aronson did not have access to information that was not otherwise available to prudent counsel; there is no risk that Royal Caribbean will be prejudiced as a consequence of his previous representation.**

Rule 4-1.9(b) prohibits an attorney who previously represented a client in a matter from using "information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known."[16]   Under the rule, once an attorney-client relationship is shown, "an irrefutable presumption arises that confidences were disclosed to that attorney."[17]  This presumption, however, does not alone establish a basis for disqualification.[18]   The commentary to the Rule establishes that although:

> [i]nformation acquired by [a] lawyer in the course of representing a client may not subsequently be used by [a] lawyer to the disadvantage of [a] client…information…that typically would be obtained by any reasonably prudent lawyer who had never represented the former client should be considered generally known and ordinarily would not be disqualifying.[19]

Additionally, in the case of an organizational client such as Royal Caribbean, "general knowledge of the client's policies and practices ordinarily will not preclude subsequent

---

[16]      R. Regulating Fla. Bar. 4-1.9(b).

[17]      *Morgan Stanley & Co., Inc. v. Solomon,* 2009 WL 413519, *5, no. 08-81330-CIV, (S.D. Fla. February 19, 2009).

[18]      *JDI Holdings, LLC v. Jet Management, Inc.,* 2009 WL 3494182, *1, no. 3:07-cv-242-MCR-EMT (N.D. Fla. October 26, 2009).

[19]      *Morgan Stanley & Co., Inc. v. Solomon,* 2009 WL 413519, * 5,  no. 08-81330-CIV, (quoting R. Regulating Fla. Bar 4-1.9(b) (comment).

representation; on the other hand, knowledge of ***specific facts*** gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation."[20]

Royal Caribbean's core argument is that Aronson's "extensive prior involvement with [Royal Caribbean] and his vast knowledge of [its] claims adjusting, case evaluation methods, and confidential litigation, defensive and protective strategies" creates an unfair advantage sufficient to disqualify him from representing Rosemarie Hernandez.[21]  It has explicitly argued that this matter is no different than the situation presented in *Royal Carribean v. Tuazon*, where a former claims adjustor for Royal Caribbean who later became an attorney was disqualified under Rule 4-1.9 from representing a plaintiff in a suit against Royal Caribbean.[22] In three of the five affidavits attached to its motion, Royal Caribbean discusses Aronson's so-called "vendor badge"[23] which apparently gave him "unfettered access to RCL's premises"[24] "without having to stop at the security desk."[25] The affidavits are also peppered with statements suggesting that Aronson had the same level of access to Royal Caribbean as a claims adjustor.[26]   Royal Caribbean simultaneously attempts to distinguish the applicability of Judge Marra's opinion in *Morgan Stanley & Co. v. Solomon*.[27]

---

[20]      R. Regulating Fla. Bar 4-1.9 (comment) (emphasis supplied).

[21]      Royal Caribbean's Amended Motion to Disqualify, p. 7.

[22]      *Id.* (*citing* 641 So. 2d 417 (Fla. 3d DCA 1994)).

[23]      Affidavit of Stacy Stanley, ¶3, Docket Entry 45-4.

[24]      Affidavit of Wendy Zepernick,¶4, Docket Entry 45-1.

[25]      Affidavit of Amy Yarrow,¶4, Docket Entry 45-2.

[26]      *See, e.g., Id.*

[27]      2009 W L 413519, *5, no. 08-81330-CIV, (S.D. Fla. February 19, 2009).

The new affidavits and arguments do nothing more than demonstrate that *Morgan Stanley* is a closer fit here than *Tauzon*. To reiterate, in *Morgan Stanley*, an attorney billed approximately 1,500 hours during a two year period defending arbitration proceedings and class actions involving individuals who had sued Morgan Stanley over investment losses and then worked another three years on "other securities matters."[28]   The attorney subsequently left his old firm and began representing plaintiffs in securities arbitration matters, including three cases against Morgan Stanley.[29] Morgan Stanley attempted to disqualify their former counsel, citing Rule 4-1.9(b), and claiming that he had knowledge of "of compensation issues, broker training programs, internal policies regarding the firing of brokers, defense strategies and techniques, and information about arbitrators" that would prejudice it.[30]

Judge Marra held that the attorney's knowledge of "Morgan Stanley's discovery procedures, organizational structure and internal policies falls under the category of information that any reasonably prudent lawyer who had not previously represented Morgan Stanley could–and presumably would –  obtain after filing suit against Morgan Stanley and conducting discovery.[31]   Similarly, the attorney's knowledge of arbitrators likely to be selected by Morgan Stanley was something that any competent attorney "examining public information regarding the history of arbitrator awards" could discern.[32]

---

[28]     2009 WL 413519, *1, No. 08-81330-CIV, (S.D. Fla. February 19, 2009).

[29]     *Id.*

[30]     *Id.* at *5.

[31]     *Id.* at *6.

[32]     *Id.*

*Tauzon*, on the other hand, involved a former *employee* who worked as a claims adjustor for Royal Caribbean, who later became an attorney and sued his former employer.[33] Royal Caribbean has attempted to fit this matter into the *Tauzon* mold, by arguing that "Aronson defended RCL in hundreds of cases and had unfettered daily access to RCL for years" and was "treated . . . as if he was an employee of the company" and, through affidavits, representing that he had the same level of access to Royal Caribbean as its claims adjustors.[34]

Regardless of these broad, non-specific allegations, Royal Carribean can not avoid the fact that Aronson never represented Royal Caribbean *in this case*[35], even during the claims stage, that he never received any confidential information whatsoever about *this* case[36], and that he was never an *actual* employee of Royal Caribbean.[37] Rather, Aronson merely functioned as an independent attorney, who was retained on a case-by-case basis, to provide outside legal services.

In addition,  Royal Caribbean's vague, non-specific effort to compare Aronson to a claims adjustor is refuted by Aronson's earlier affidavit in this matter. Aronson specifically represented that he was never shown or possessed any claims handling materials, defense attorney manuals, litigation manual, or any other documents used by Royal Caribbean in analyzing  claims.[38] Moreover, despite the dire implications inherent in the Royal Carribean

---

[33]     641 So. 2d 417.

[34]     *See, e.g.*, Affidavit of Amy Yarrow, ¶4, Docket Entry 45-2.

[35]     Affidavit of Aronson, ¶¶13, 15(noting that this lawsuit was not filed until eight months after he left his defense practice)(Exhibit "B" to this motion).

[36]     *Id.*

[37]     Affidavit of Aronson, ¶17, ( describing the firms Aronson has been employed with).

[38]     Affidavit of Aronson, ¶8(a).

affidavits, Aronson <u>never</u> had the ability to directly access  any computers or servers that would contain confidential information from Royal Caribbean.[39] Nor did he engage in any clandestine efforts to procure documents during off hours.[40]

Indeed, if Aronson was such an integral part of the Royal Caribbean team, one must necessarily question why the number of cases his firm received from Royal Caribbean dropped from 65 in 2006, to 33 in 2007, to 4 in 2008.[41] In the final nine months of his practice, he received *one* case from Royal Caribbean. Thus, Aronson was effectively "phased out," while Royal Caribbean ramped up its own in-house legal department.[42] When Aronson left his defense practice in September of 2009, he only had seven active Royal Caribbean files remaining, which he turned over to his former partner.[43] Thus, he can not realistically be portrayed as a part of the Royal Carribean "team."

Reviewing the Royal Caribbean affidavits with full knowledge of Aronson's decreased involvement in defending claims frames them in an entirely different light. Amy Yarrow, for example, claims that "Mr. Aronson was very often in our offices, more so than other outside counsel" and that "[i]f Mr. Aronson *wished* to learn information regarding claims, all he had to do was ask me or another adjustor . . . [h]e did this many times."[44] If being able to ask a claims adjustor questions about a file or knowing that the cruise line hires "outside companies to address safety issues" provides a sufficient basis to disqualify a former outside counsel under

---

[39]    Affidavit of Aronson, ¶9.

[40]    *Id.*

[41]    Affidavit of Aronson, ¶¶ 19 – 22.

[42]    Affidavit of Aronson, ¶21.

[43]    Affidavit of Aronson, ¶3.

[44]    Affidavit of Amy Yarrow,¶¶4 – 5, Docket Entry 45-2.

Rule 4-1.9(b), it is unlikely that *any* attorney who has ever undertaken insurance defence work would *ever* be able to represent plaintiffs in this State against a former client or institutional defendant. Furthermore, the suggestion that "Mr. Aronson provided legal advice about safety issues"[45] would arguably disqualify any former defence counsel attorneys who had ever conducted CLE seminars for institutional clients on relevant or similar issues, despite the fact that this is a routine practice.

Yarrow also states that Aronson "attended **_a_** meeting addressing safety issues and was privy to intimate knowledge addressed at this meeting."[46]   While this might present a more compelling argument if Aronson had attended a meeting involving a potential claim by Rosemarie Hernandez, or maybe even safety issues involving the Flow Rider, non specific allegations concerning attendance at "a meeting" does little to advance Royal Caribbean's argument for disqualification, as this does not demonstrate that he became privy to something so secret as to compromise Royal Caribbean's entire defense of this discrete claim.

Wendy Zepernick claims that from 1990 to 2008, she was the designated-corporate representative for Royal Caribbean for almost every deposition "*involving crew claims*. . . many of which were defended by Mr. Aronson."[47] Considering that Aronson's case load had plummeted 90% in the two year period from 2007 to 2009 and considering that Ms. Zepernick was a crew-claims adjustor, it is questionable whether she would have had *any* interaction with Aronson that would be remotely germane to this guest-claims case.

---

[45]      Affidavit of Amy Yarrow, ¶6, Docket Entry 45-2.

[46]      Affidavit of Amy Yarrow, ¶8, Docket Entry 45-2.

[47]      Affidvit of Wendy Zepernick,¶5, Docket Entry 45-1.

In similar, non-specific fashion,  Stacy Stanley, another crew-claims adjustor, remarks that "[o]n many occasions, I would call Mr. Aronson about a claim I was handling and ask advice of valuing the claim. I would share my thoughts on the claim and what my valuation was."[48] How does this differ from conversations that occur thousands of times a day between corporate litigants and their outside counsel?  David Banciella, the only Royal Carribean adjuster who handled guest claims, makes the exact same statement.[49]  Presumably, both apparently disclosed and discussed information that any defense attorney who has been practising for more than a few years would know from personal experience, or could presumably learn from a jury verdict search on Westlaw or LEXIS..

Carrying over from Royal Caribbean's prior motion is the affidavit of Director of Guest and Employee Legal services, Salvatore A. Faso II, who claims that Aronson was privy to "confidential information" that he would not have been able to obtain but for his relationship with Royal Caribbean. Mr. Faso, was who was not employed by Royal Caribbean during most of Mr. Aronson's tenure as outside counsel, claims  he became privy to the following "confidential information":

> Which experts Royal Caribbean uses. . .  the process [it] employs to arrange medical care for its passenger . . . internal and external factors that increase the difficulty of defending such claims  . . .  Royal Caribbean's internal claims handling procedures  . . .Royal Caribbean's approach to settlement  . . . Identification of potential deficiencies in [its] case . . .remedial  action suggested by Royal Caribbean's inside counsel to Aronson that should take place aboard [its] vessels.[50]

---

[48]      Affidavit of Stacey Stanley, ¶4, Docket Entry 45-4.

[49]      Affidavit of David Banciella,¶5, Docket Entry 45-5.

[50]      Affidavit of Salvatore Faso ¶7, Docket Entry 45-3.

Royal Caribbean summarizes this generalized and deliberately non-specific list by concluding that "Aronson was given Royal Caribbean's playbook"[51] and that the information in this list is "not information that is generally known…and is not the type of information that would be provided to an opposing counsel during discovery."[52]

Arguably, this Court should not need to resort to Aronson's affidavit to recognize that the information Royal Caribbean is presently labelling as "confidential" and inaccessible really is not.   Indeed, as Aronson remarks in his affidavit, much of this information is readily discoverable and relevant;[53] and some  is a matter of public record.[54]  Aronson is also completely unaware of the existence of any such "confidential information," such as the so-called Royal Caribbean litigation "play book,"[55] and has affirmatively stated that this type of information does not exist, to his knowledge.  His affidavit in that regard is quite detailed, unlike the generalized, generic collection of materials referenced in Royal Caribbean's affidavits. Indeed, Royal Caribbean revamped its entire claims department, hired in house legal attorneys, and brought in Faso from Carnival Cruise Line and Paul Hehir to direct litigation in November 2007.  Whatever "playbook"Royal Caribbean   was using is certainly obsolete at this juncture–along with Aronson.

The balance –  in fact the vast majority –  of the materials mentioned in the affidavits reflect information that any attorney who litigates regularly with Royal Caribbean would

---

[51]        Affidavit of Salvatore Faso ¶8, Docket Entry 45-3.

[52]        Affidavit of Salvatore Faso ¶9,Docket Entry 45-3.

[53]        Affidavit of Aronson, ¶¶11 (b) and (c).

[54]        Affidavit of Aronson, ¶11 (b).

[55]        Affidavit of Aronson, ¶8 (a); 11(c), (d), (e).

discover in due course.[56]   As has been noted in the cited authority, the mere fact that Aronson may have pre-existing knowledge of information that will ultimately be disclosed through discovery – even if it may provide a momentary, initial advantage at the onset of litigation-does not warrant disqualification.[57]   Rather, as has been set forth by the Commentators to the Restatement of the Law Governing Lawyers, the fact that a lawyer may learn a former client's "preferred approach to bargaining in settlement discussions…[or] willingness or unwillingness to be deposed by an adversary" does not warrant disqualification absent a showing that "such information would be directly in issue or of unusual value in the subsequent matter."[58] As a result, it would not matter that Aronson was already aware of claims valuations, or that Royal Caribbean uses an outside safety company, as he would be able to find that information on his own through sources *any* competent attorney could utilize. This type of information is not reflective of secrets or *specific facts* about this matter, which would give Aronson an unfair advantage, premised upon confidential information.   Royal Caribbean's motion should be denied.

**B.     "Substantially Related" as used in 4-1.9 means representation in the same matter or one where the attorney will be required to attack his previous work.**

Under Rule 4-1.9(a) an attorney who has previously represented a client in a matter cannot subsequently "represent another person in the same or a substantially related matter in

---

[56]      Affidavit of Aronson, ¶11.

[57]       *Kaplan v. Divosta Homes, L.P.*, 20 So. 3d 459, 463 (Fla. 2d DCA 2009) (case evaluated under Rules 4-1.7, 4-1.8, and 4-1.9).

[58]       Restatement (Third) of the Law Governing Lawyers §132, comment d(iii); *see also Vestron, Inc. v National Geographic Soc.*, 750 F. Supp. 586 (S.D.N.Y. 1990) (under New York analogue to Rule 4-1.9, mere insight into "litigation thinking", if deemed basis for disqualification, would mandate disqualification in virtually every successive representation situation; motion for disqualification denied)).

which that person's interests are materially adverse to the interests of a former client unless the former client gives informed consent."[59]  A standing caveat to this rule prohibits disqualification of a "lawyer who recurrently handled *a type of problem* for a former client" who then later represents "another client in a wholly *distinct problem of that type* even though the subsequent representation involves a position adverse to the prior client.[60]  In addition, the term "substantially related" was defined — and defined narrowly —  by additional commentary added to Rule 4-1.9 in 2006.[61]  According to the prevailing Rule, matters are only considered substantially related if they "involve the same transaction or legal dispute, or if the current matter would involve the attorney attacking work performed for the former client.[62]  Yet even under earlier versions of the Rule, the core question has always required the court to determine "whether the lawyer was so involved in the *matter* that the subsequent representation can justly be described as *changing of sides in the matter in question*."[63]

Here, Royal Caribbean suggests on pages 4, 7, and 9 of its Motion that this matter is substantially related to previous cases Aronson worked on. It argues that "Aronson's prior representation of RCL is so significant that it renders his representation in this case an effective 'changing of the sides.'"[64] As has been made clear by the case law and the commentary to the rules themselves, this is *precisely* the type of allegation that does not meet the "substantially

---

[59]     R. Regulating Florida Bar 4-1.9(a).

[60]     R. Regulating Fla. Bar. 4-1.9 (comments)(emphasis supplied).

[61]     *In re Amendments to the Rules Regulating the Florida Bar*, 933 So. 2d 417, 445 (Fla. 2006).

[62]     R. Regulating Fla. Bar. 4-1.9 (comments).

[63]     *Id.*

[64]     Amended Motion for Disqualification, p.4.

related" definition expressed in the Commentary to Rule 4-19(a). Matters are <u>only</u> considered substantially related if they "involve the same transaction or legal dispute, or if the current matter would involve the attorney attacking work performed by the former client."[65] Thus,  in order for Royal Caribbean to succeed in showing a substantial relationship, it must show that Aronson represented it in *this* case or switched sides in *this matter*, not a matter that shares superficial similarities to it.

1.    ***Aronson's work as outside defense counsel for Royal Caribbean is not substantially related to the Hernandez case; Rule 4-1.9(a) is not implicated by his representation.***

The fact that Aronson previously represented Royal Caribbean in numerous prior negligence cases is immaterial and does not alone serve as a basis to disqualify him in this case. As the commentary defines the Rule, and as the cases apply the Rule and commentary, it is not the frequency of cases that matter.  Rather, it is the overlap of specific facts that may subject an attorney to disqualification.   To do otherwise would be to disregard the axiom that "disqualification of a party's chosen counsel is an extraordinary remedy and should only be resorted to sparingly".[66]  Indeed, such a rationale would effective exclude the most qualified of attorneys from representing plaintiffs simply because they have mastered a particular branch of the law.[67]

In *Morgan Stanley v. Solomon*, supra, Judge Marra found no Rule 4-1.9(a) violation for an attorney who represented Morgan Stanley for two years and then switched sides.[68]   He

---

[65]      R. Regulating Florida Bar. 4-1.9 (comments).

[66]      Health Care and Retirement Corp. of America, Inc. v. Bradley, 944 So. 2d 508, 511 (Fla. 4th DCA 2006) (*quoting Singer Island, Ltd. v. Budget Constru. Co.,* 714 So. 2d 651, 652 (Fla. 4th DCA 1998)).

[67]      Restatement (Third) of the Law Governing Lawyers § 132, comment d(iii).

[68]      2009 WL 413519, * 3 -5,  no. 08-81330-CIV, (S.D. Fla. February 19, 2009).

specifically noted that the attorney was involved in "the same *type* of cases" – arbitrations involving investors against Morgan Stanley – but not the *same transactions*.[69]   The Court predicated its opinion in part upon the fact that "like negligence cases, each of [the attorney's] cases involved unique facts."[70]   Furthermore, in representing his new clients, the attorney was not required to attack his own work.[71]   He was simply obligated to advance legal theories that would have been presented by any competent and experienced lawyer.[72]

Judge Marra's opinion relied in part upon *Health Care and Retirement Corp. of America, Inc. v Bradley*.[73]   There, an attorney who formerly represented a nursing home in some sixty negligence cases (billing 2,100 hours) began representing patients in similar negligence cases against his former client.[74]   The nursing home moved unsuccessfully to disqualify their former counsel.   Florida's Fourth District Court of Appeal noted that the attorney had previously handled a similar "type of problem" for the nursing home – "negligence cases involving patients who suffered from pressure ulcers or falls".[75]   Nevertheless, the Court expressed the opinion that the new case involved a "wholly distinct problem of that type".   The Court contrasted representation in a general negligence claim with the hypothetical situation that might arise where an attorney represents a manufacture in a <u>specific</u> product defect case and then subsequently files suit against the former client-manufacturer <u>based upon the same defect in that</u>

---

[69]     *Id.* At 3-4 (emphasis supplied).

[70]     *Id.* at 4.

[71]     *Id.*

[72]     *Id.*

[73]     961 So. 2d 1071 (Fla. 4th DCA 2007).

[74]     *Id.* at 1072.

[75]     *Id.* at 1074.

same product.[76]  The Court expressly noted that "each negligence case turns on its own facts" and therefore would not be substantially related under Rule 4-1.9(a) merely because they were the same *type* of case.[77]

In *Royal Caribbean Cruises, Ltd. v. Buenaagua*, Florida's Third District Court of Appeal declined an invitation to again disqualify the attorney in *Tauzon* from representing several injured crew members in suits against Royal Carribean.[78] The Court noted — in addition to the passage of time — the claims adjustor the attorney worked for was no longer associated with Royal Carribean and that the accidents giving rise to the lawsuit occurred well after  his employment as an adjustor ended, ensuring there was no possibility he would have access to information from his previous employment that would give him a present advantage.[79] A prophetic quote from that opinion is instructive here:

> RCCL's affidavits merely related what every lawyer already knows:  Jones Act cases are all similar.  This is a basic principle of our jurisprudential system.   All patent cases are similar; all bankruptcy cases are similar; indeed, all eviction, *negligence* and immigration cases, and all cases of any singular type share elements in common.[80]

As Aronson notes in his affidavit, *Hernandez*  is a negligence case involving a woman who was injured after slipping in a puddle of water at the bottom of a stairwell near a Flow Rider surfing

---

[76]      *Id.* 1074 (*referring to Sears, Roebuck & Company v. Stansburry,* 374 So. 2d 1051 (Fla. 5th DCA 1979) (attorney's firm who represented Sears in a defect case in 1969 involving a lawnmower could not then represent a plaintiff in a case *involving the same lawnmower* against Sears.)  The Fourth District noted that the representation would have required the attorney to attack his previous work.  *See also Contant v. Kawasaki Motors Corp. U.S.A.,* 826 F. Supp. 427 (M.D. Fla. 1993) (attorney who switched sides in subsequent product defect liability case was disqualified).

[77]      *Id.*

[78]      685 So. 2d 8, 10 (Fla. 3d DCA 1996).

[79]      *Id.* at 10 – 11.

[80]      *Royal Caribbean Cruises, Ltd. v. Buenaagua,* 685 So. 2D 8, 11 (Fla. 3d DCA 1996) (emphasis supplied).

attraction while staying as a guest on the M/S Liberty of the Seas.[81]   The case involves its own unique factual circumstances, many of which are novel even for an attorney of Aronson's considerable experience. Notably, neither Aronson nor his firm ever worked on a case involving the Flow Rider or a slip-and-fall around a Flow Rider when he was actively defending Royal Caribbean.[82]   He was never involved in a case involving Ms. Hernandez or any of the *specific* facts of her case.[83]  Because disqualification requires a showing that the attorney essentially switched sides in the same case or will be required to attack his own work in the case against his former client, and because Aronson had nothing to do with the *Hernandez* case, or any unique, particularized knowledge about the case, there is no basis to disqualify him under Rule 4-1.9(a).

### Conclusion

Disqualification of counsel is an "extraordinary remedy and should only be resorted to sparingly."[84]   Royal Carribean appears to advance disqualification as a means to a gain tactical advantage, and to deprive a litigant of her chosen counsel. Royal Caribbean–in two separate motions –  has failed to show that Aronson is in possession of confidential information, not readily accessible by prudent counsel, that would prejudice it in the defense of the *Hernandez* claim. Furthermore, its efforts to label Aronson as the functional equivalent of a claims adjustor is refuted by Aronson's affidavit and the facts. Finally, there is no basis to establish that this matter is substantially related, to any of Aronson's previous work. Therefore, this Court should deny Royal Caribbean's amended motion to disqualify.

---

[81]        Affidavit of Aronson, ¶13, Exhibit B.

[82]        Affidavit of Aronson, ¶¶15-19, Exhibit B.

[83]        Affidavit of Aronson, ¶17, Exhibit B.

[84]        *Singer Island ltd. Inc. v. Budget Const. Co., Inc.* 714 So. 2d 651, 652 (Fla. 4th DCA 1998).

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was filed with the Clerk of the Court and served on the following by using the CM/ECF system this 13th day of August, 2010 to: Curtis J. Mase, and Valentina Tejera, Esq., Mase, Lara, Eversole, P.A., 2601 S Bayshore Drive, Suite 800, Miami, FL  33133 and James M. Walker, Esq. Walker & O'Neill, P.A., 7301 S.W. 57th Court, South Miami, Florida  33143.

STEPHENS, LYNN, KLEIN, P.L.
Attorneys for Jonathan Aronson
9130 S. Dadeland Blvd., PH II
Two Datran Center
Miami, Florida  33156
Telephone: (305) 670-3700
Email: kleinr@stephenslynn.com

By: /s/ Robert M. Klein
ROBERT M. KLEIN
Florida Bar No. 230022