IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.: 10-21636-CIV-HUCK/O'SULLIVAN

ROSEMARIE HERNANDEZ,

        Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian Corporation,

        Defendant.

_____/

**WALKER'S MEMORANDUM IN OPPOSITION TO
DEFENDANT'S FIRST AMENDED MOTION TO DISQUALIFY
PLAINTIFF'S COUNSEL**

Plaintiff's counsel, **WALKER & O'NEILL, P.A.** ("Walker"), hereby files this Memorandum in Opposition to Defendant, **ROYAL CARIBBEAN CRUISES, LTD.'s**, First Amended Motion to Disqualify Plaintiff's Counsel, and as grounds therefore, state as follows:

**BACKGROUND**

This matter originally came before the Court on Defendant's Motion to Disqualify Plaintiff's Counsel [D.E. 18]. Upon receipt of the motion, Plaintiff advised Defendant of its intent to move for sanctions under Rule 11 based on the factual insufficiency and legal inaccuracies contained within Defendant's motion. Defendant filed a notice of withdrawing the motion prior to expiration of the twenty-one day "safe harbor" provision of Rule 11 and requested leave to file a "corrected" motion [D.E. 36]. This Court permitted

Defendant to file a "corrected" motion and ordered that, if appropriate, Plaintiff could seek fees and costs incurred as a result of the original motion to disqualify. [D.E. 42] (the "Order").  The Court further instructed counsel to comply with "all local rules" or face sanctions.

Once again Defendant has filed a motion seeking to disqualify Plaintiff's counsel Jonathan B. Aronson, P.A. d/b/a The Aronson Law Firm ("Aronson") and Walker, from representing Plaintiff in this matter [D.E. 49].  Like its predecessor, this "amended" motion is factually and legally insufficient.  This is not a "corrected" motion as permitted by this Court's Order but simply a rehash of Defendant's infamous "play book" theory of disqualification.[1]  Plaintiff's memorandum filed in opposition to Defendant's original motion to disqualify is equally applicable to this "amended" motion [D.E. 33].  Plaintiff would add the following points.

## DEFENDANT'S FAILURE TO CONFER

From the onset, Defendant has made clear that it intends to disqualify Walker and Aronson at any cost - regardless of controlling law or the specific facts of this case.[2]  Defendant has consistently refused to engage in meaningful discussions regarding this matter as required by the Local Rule 7.1(a)(3).  Defendant filed its original motion without

---

[1] See Declaration of Salvatore A. Faso II paragraph 8 which states: "Put simply, as Royal Caribbean's attorney, Aronson was given Royal Caribbean's play book." [D.E. 49-3].

[2] Walker Affidavit, p. 10, 11, paragraphs 34-37 [D.E. 32-1].  Exhibit "B"

any pretense of engaging in a pre-filing conference. Only after this failure was brought to the attention of the Defendant by this Court, did Defendant then make dilatory and after the fact attempts to confer. Its counsel then responded to Aronson's and Walker's complaints that they ignored Local Rule 7 by accusing them of having "misplaced anger" and being "paranoid." Exhibit "A." Defendant repeated this conduct by filing a motion to file "corrected" motion without attempting to confer with either Aronson or Walker. Exhibit "A."

Despite this Court's Order specifically directing counsel to follow the local rules, Defendant proceeded to file an "amended" motion without consulting Aronson or his counsel. [D.E. 54-1]. Defendant's consultation with Walker consisted of a perfunctory telephone conversation in which Defendant flatly refused to provide Walker any explanation for a "corrected" motion. Defense counsel promised to sent Walker a copy of the motion before it was filed and then refused to do so. Exhibit "A." Defendant failed to articulate new or specific grounds for disqualifying Walker. Defendant failed to explain how the "amended" motion corrected the deficiencies in the original motion. In fact, as it turns out, Royal Caribbean just re-wrote the same motion and asked and added five new affidavits which contain no relevant facts but lots of speculation and innuendo.

The boilerplate Rule 7.1 Certification on Defendant's amended motion tells the tale. [D.E. 49, p. 12]. It fails to state any reasonable efforts made by Defendant to confer in good faith because there were none. <u>Thomas v. Miami Dade Public Health Trust</u>, 2009 WL

377074, *1 (S.D. Fla. 2009)("If no conference has occurred, then the motions do not comply with the Local Rules because they do not set forth, 'with specificity,' Plaintiff's reasonable efforts to confer with the Defendant."). Had Defendant engaged in meaningful, good faith discussion at any time during the course of this disqualification matter, several rounds of unproductive motion practice could have been averted. Failure of a party to engage in a pre-filing conference as required by Rule 7.1 (a) (3), is in and of itself grounds for denial of the motion and is grounds for the imposition of fees and costs. See, Paxton v. Great American Insurance Company, 650 F. Supp. 2d 1208, 1212 (S.D. Fla. 2009)("Plaintiff has failed to comply with Local Rule 7.1.A.3 . . . therefore the motion will be denied. . . the Court will deny the same and order Defendant to set forth the fees and costs incurred in preparing and executing its Response"). The amended motion should be denied due to Defendant's repeated and flagrant failure to confer with opposing counsel, notwithstanding this Court's explicit instructions to the contrary. Plaintiff should be awarded its attorney's fees and costs in responding to both the original motion and the amended motion.

## DEFENDANT'S AMENDED MOTION DOES NOT CORRECT THE ORIGINAL MOTION

The amended motion is nothing more than a re-mix of the original motion. Defendant argues that Aronson's knowledge of the corporate policies and procedures of the Defendant are the basis for disqualification. It attempts to depict Aronson as an employee of the company and as the architect of Defendant's defense strategies and

procedures. It characterizes Aronson as the hub of its defense practice with "sweeping knowledge" of the entirety of Defendant's corporate confidences. [D.E. 49, p.9-10] The truth, however, is far more pedestrian. Aronson was one of many defense attorneys representing the Defendant over the years until the cruise line began culling him from it roster of outside counsel. Aronson Affidavit ¶20-22 [D.E. 54-2].

Beginning in 2007, Defendant embarked on a new strategy of keeping cases in-house or referring them to arbitration. Far from being the indispensable "uber" attorney depicted by the Defendant, Aronson and his firm were some of the first attorneys to be phased out. The fact that he received 65 cases to handle in 2006 and only one in 2009 bears this out.

The knowledge possessed by Aronson regarding the Defendant's policies and procedures is precisely the information permitted under the comments to Rule 4-1.9(b). Comments to the rule state:

> In the case of an organizational client, <u>general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation</u>; on the other hand, knowledge of <u>specific facts</u> gained in a prior representation that are <u>relevant</u> to the matter in question ordinarily will preclude such a representation. (emphasis added).

Even if, for the purpose of argument, Aronson did possess knowledge of specific facts regarding other cases, Defendant has wholly failed to identify these specific facts or to show how they might be relevant to this action. This case involves an accident at the bottom of a flight of stairs next to Defendant's FlowRider water attraction. Aronson has

never participated in or defended a FlowRider case. He has never litigated a case in which the Plaintiff, Ms. Hernandez, was a party. This is a run of the mill slip and fall case. It will be prosecuted and defended like one of the legions of other slip and fall cases currently pending before Miami courts. In the absence of specific knowledge regarding this ship, this stairwell, or this FlowRider, it is hard to envision what knowledge Aronson might have which would be a tactical advantage regarding anything.

Defendant attempts to disqualify Aronson and Walker through the use of innuendo.[3] The affidavits filed in support of the amended motion stress that Aronson had physical access to Defendant's office.[4] Physical access does not, however, mean that

---

[3]The Declaration of Salvatore A. Faso II goes as far as to accuse Aronson of taking confidential information for his own use. Paragraph 6 states: "He had access to privileged files containing attorney-client correspondence, policies, procedures and practices, and confidential and proprietary information and records (copies of which Aronson likely still possesses), none of which he would have been able to access but for his representation of Royal Caribbean." But there are no facts presented by Defendant regarding what exactly Aronson possesses. [D.E. 49-3].

[4]Michele Perez' Affidavit paragraph 4 states "Mr. Aronson was very often in our offices, more so than other outside counsel. He had a vendor badge which allowed him to come and go as he pleased, without having to stop at the security desk. His level of access to areas at RCL was the same as mine."[D.E. 49-6]. Stacy Stanley Affidavit paragraph 3 states " He had a vendor badge which allowed him the same level of access to areas at RCL as I had." [D.E. 49-4]. Amy Yarrow Affidavit paragraph 4 states "His level of access at RCL was the same as mine." [D.E. 49-2]. Wendy Zepernick Affidavit paragraph 4 states ". . . Mr. Aronson, had unfettered access to RCL's premises thorough the use of his vendor badge and access to RCL's internal data bases through RCL personnel." Paragraph 7 states: "His vendor badge allowed him the same level of access in the offices and on the ships as I had. He would not have had such a badge if he was [sic] not considered to be absolutely trusted, as if he was [sic] an employee of the company. [D.E. 49-1].

Aronson had access to computer systems, files and other data bases. He did not. The affidavits fall short of making this accusation because they cannot. By design, however, they are designed to leave the reader with the unsavory feeling that just maybe while Aronson was in Defendant's office he was accessing computers or peeking into files but there is no evidence of such conduct. Defendant's latest motion lacks specific facts but lost of insinuations.

This smear job by Defendant continues with the suggestion that Walker joined Aronson as co-counsel for the purpose of obtaining a tactical advantage through the use of confidential information. [D.E. 49, p. 10]. This false accusation is patently offensive to Walker and demeaning to Aronson. Aronson is a twenty-six year attorney who has successfully represented both defendants and plaintiffs over the course of his career. He has extensive knowledge of medical matters and is an experienced trial attorney who has tried over fifty cases. James Walker is a twenty-seven year attorney who has successful litigated against the Defendant for over ten years. He has been at the forefront of advocating for cruise line reform for over a decade. His clients have testified before Congress in five different Congressional hearings regarding cruise line safety.[5] Through his blog, Cruise Law News, James Walker is in daily contact with crew members and passengers all over the world. Walker was the first attorney to obtain Defendant's crime statistics. He was the first attorney to obtain Defendant's Standards Quality Assurance

---

[5]Walker Affidavit, p. 3, paragraph 10 [D.E. 32-1].

Manual ("SQM"). He was the first attorney to obtain reports commissioned by this cruise line which confirmed that it had a profound problem with sexual assaults in its fleet of cruise ships. Walker is part of the Plaintiff's Florida Maritime Trial Association, which actively shares information regarding cruise lines. It would not be braggadocio to say that Walker probably knows more about Defendant than Aronson.

## THERE IS NO BASIS TO DISQUALIFY WALKER

Defendant has failed to show a basis for the disqualification of Aronson under Rule 4-1.9. Without such a showing Defendant's attempts to disqualify Walker under Rule 4-1.10(b) must fail. Rule 4-1.10(b) states:

> When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the <u>same or substantially related matter</u> in which that lawyer, or a firm with which the lawyer was previously associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by rules 4-1.6 and 4-1.9(b) <u>that is material to the matter</u> (emphasis added).

As a preliminary matter, Rule 4.10(b) applies to lawyers moving <u>between firms</u>. The rule is not applicable to this case where Aronson and Walker maintain their own individual firms, do not share office space or staff and are separate legal entities. Revisions to the Rules in 2006 specifically deleted the definition of the word "firm" which would allow treating Aronson and Walker as one firm under Rule 4-1.10(b).[6] Furthermore, comments

---

[6] The following language was deleted from the comments to Rule 4.10 by the 2006 amendments: "Definition of firm For purposes of the Rules of Professional Conduct, the term "firm" includes lawyers in a private firm and lawyers employed in the legal department of a corporation or other organization or in a legal services organization. Whether 2 or more lawyers constitute a firm within this definition can depend on the

to Rule 4.10 make clear that the rule applies when one lawyer moves from one <u>firm</u> to another firm: "When a lawyer moves <u>from 1 firm to another</u> the situation is governed by subdivision (b) and (c)" (emphasis added).

Even if Aronson and Walker were to be treated as one firm for purposes of Rule 4-1-10(b), the rule specifically recognizes and permits lawyers, such as Aronson, to represent different sides within a field of practice. Comments to Rule 4-1.10 state:

> Second, the rule of disqualification should not be so broadly cast as to preclude other persons from having reasonable choice of legal counsel. Third, the rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

Vicarious disqualification under Rule 4-1.10 is "based on a functional analysis . . . Two functions are involved: preserving confidentiality and avoiding positions adverse to

---

specific facts: for example, 2 practitioners who share office space and occasionally consult or assist each other ordinarily would not be regarded as constituting a firm. However, if they present themselves to the public in a way suggesting that they are a firm or conduct themselves as a firm, they should be regarded as a firm for purposes of the rule. The terms of any formal agreement between associated lawyers are relevant in determining whether they are a firm, as is the fact that they have mutual access to confidential information concerning the clients they serve. Furthermore, it is relevant in doubtful cases to consider the underlying purpose of the rule that is involved. A group of lawyers could be regarded as a firm for purposes of the rule that the same lawyer should not represent opposing parties in litigation, while it might not be so regarded for purposes of the rule that information acquired by one lawyer is attributed to another."

a client." Comments to Rule 4-1.10. Both of the functions are addressed in the analysis under Rule 4-1.9. In this case confidentiality is preserved because the information allegedly possessed by Aronson is either generally known or is of Defendant's general policies and procedures. Defendant fails to identify any such specific confidential information know by Aronson which might be relevant to this lawsuit. Aronson's representation of Plaintiff is permitted because this action is not the same or substantially related to any prior representation of Defendant by Aronson. There is no basis to disqualify Aronson under Rule 4-1.9, thus there can be no vicarious disqualification of Walker under Rule 4-1.10.

Defendant invites error by citing as authority for the disqualification of Walker cases involving attorneys who joined a firm and took a position adverse to their former client **in the same case**. State Farm v. K.A.W., 575 So. 2d 630 (Fla. 1991)(attorney disqualified from representing father, mother and child in uninsured motorist claim when father was subsequently sued under theory of contributory negligence in the same case); Gaton v. Health Coalition, 745 So. 2d 510 (Fla. 3rd DCA 1999)( law firm disqualified after new attorney joined law firm who had represented the other side in an on-going case); Outdoor Products v. Harpley, 183 B.R. 645 (M.D. Fla. 1995)(law firm disqualified after it hired attorney who had previously represented defendant in the same preference proceedings).

This case is squarely on point with Akrey v. Kindred Nursing Centers, 837 So. 2d 1142 (Fla. 2d DCA 2003) where the owner of a nursing home (Vencor) sought to disqualify

a plaintiff's law firm after an associate (DiStasio) who had previously defended the nursing home joined the plaintiff's law firm.[7] The court noted that the case would turn on whether the present action was a "substantially related matter" to other cases and whether "DiStasio had not only received protected client confidences but also that the confidential information was material to this matter." Id. 1144 (internal quotes and ellipses omitted). The court quashed the lower court order of disqualification concluding that Vencor had failed to meet its burden of proof. The court was not persuaded by Vencor's assertion that during the course of representing Vencor in twenty-five law suits, DiStasio had "learned confidential litigation and settlement strategies, as well as other confidential corporate information."[8] Id. 1145.

Nor was the court persuaded by the fact that DiStasio had moderated a panel discussion in a seminar sponsored by Vencor for outside counsel entitled "Discovery Issues: Defending Against Production of all Personnel Files and All Resident Records." Id. 1145. The court refused to consider a "bald assertion" that the case against Vencor involved "subject matter identical to Mr. DiStasio's former representation of Vencor." Id. Relying on Royal Caribbean v. Buenaagua, 685 So. 2d 8, 11 (Fla. 3d DCA 1996), the court held that Vencor had failed to meet its burden of proof "it is a basic principle of our

---

[7] The Akrey case was decided before the 2006 amendments to the rules. At that time, the rules provided for a more expansive standard for disqualification.

[8] The court noted that these allegations were made in unsworn testimony by Vencor's attorneys.

jurisprudential system that all patent cases are similar; all bankruptcy cases are similar; indeed, all eviction, negligence and immigration cases, and all cases of singular type share elements in common." Id.  See Bon-Secours-Maria Manor v. Seaman, 959 So. 2d 774 (Fla. 2d DCA 2007)(relying on Akrey to conclude that defendant had failed to meet its burden of proof in showing that disqualification of attorney law firm was warranted in the same action).

Defendant's attempt to disqualify Walker is strategically motivated and should be denied.

## CONCLUSION

"Disqualification of a party's counsel is an extraordinary remedy and should be resorted to sparingly."  Kaplan v. Divosta Homes, 20 So. 3d 459, 461 (Fla. 2d DCA 2009) citing Vick v. Bailey, 777 So. 2d 1005, 1007 (Fla. 2d DCA 2000).  Defendant has now twice failed to demonstrate a basis for disqualifying Aronson, much less Walker.  Defendant's motion should be denied and Walker should be awarded attorney's fees and costs in responding to the original motion and the amended motion.

Dated: August 17, 2010    Respectfully submitted,

Miami, Florida       /s/ James M. Walker
         James M. Walker
         Florida Bar No. 755990
         WALKER & O'NEILL, P.A.
         Attorneys for Plaintiffs
         Plaza 57, Suite 430
         7301 S.W. 57th Court
         South Miami, Florida 33143

         Tel. No.  (305) 995-5300
         Facsimile: (305) 995-5310
         jwalker@cruiselaw.com

## CERTIFICATE OF SERVICE

  I hereby certify that on August 17, 2010, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notices of Electronic Filing.

        /s/ James M. Walker
        James M. Walker (755990)

## SERVICE LIST

**Rosemarie Hernandez v. Royal Caribbean Cruises, Ltd.**
**Case No.: 10-21636-CV-HUCK/O'SULLIVAN**

Curtis J. Mase, Esq.
*Counsel for the Defendant*
Mase Lara Eversole, P.A.
SBS Tower
2601 South Bayshore Drive
Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:   (305) 377-0080
**Email: cmase@mletrial.com**

Valentina M. Tejera, Esq.
*Counsel for the Defendant*
Mase Lara Eversole, P.A.
SBS Tower
2601 South Bayshore Drive
Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:   (305) 377-0080
**Email: vtejera@mletrial.com**

Sterling A. McMahan, Esq.
*Counsel for the Defendant*
Mase Lara Eversole, P.A.
SBS Tower
2601 South Bayshore Drive
Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:   (305) 377-0080
**Email: smcmahan@mletrial.com**

Scott P. Mebane, Esq.
*Counsel for the Defendant*
Mase Lara Eversole, P.A.
SBS Tower
2601 South Bayshore Drive
Suite 800
Miami, Florida 33133
Telephone: (305) 377-3770
Facsimile:   (305) 377-0080
**Email: smebane@mletrial.com**

Robert Michael Klein
*Counsel for Movant*
Stephens Lynn Klein. P.L.
9130 S. Dadeland Blvd, Penthouse I & II
Miami FL 33156
Telephone: (305) 670-3700
Facsimile: (305) 670-8592
**Email: KleinR@stephenslynn.com**

James M. Walker, Esq.
*Counsel for the Plaintiff*
Walker & O'Neill, P.A.
7301 S.W. 57th Court, Suite 430
South Miami, Florida 33143
Telephone: (305) 995-5300
Facsimile:   (305) 995-5310
**Email: jwalker@cruiselaw.com**

Jonathan Aronson, Esq.
*Co-Counsel for the Plaintiff*
Aronson Law Firm
P.O. Box 565130
Miami, Florida 33256
Telephone: (305) 665-8626
Facsimile: (305) 665-3429
**Email: jaronson@aronsonlawfirm.com**