UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.:  10-21636-CIV-HUCK/O'SULLIVAN

ROSEMARIE HERNANDEZ,

    Plaintiff,

vs.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendant.

_____/

### APPEAL PURSUANT TO 28 U.S.C. §636(b)(1)(A) FROM MAGISTRATE'S ORDER DENYING DEFENDANT'S FIRST AMENDED MOTION TO DISQUALIFY PLAINTIFF'S COUNSEL

Royal Caribbean Cruises Ltd., Defendant (hereinafter "RCL"), pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Magistrate Rule 4(1)(a), hereby appeals from Magistrate Judge O'Sullivan's Order (D.E. 74 "hereinafter Order") that denied RCL's First Amended Motion to Disqualify Plaintiff's Counsel (D.E. 54).

### INTRODUCTION

Magistrate O'Sullivan's Order misapplies Rule 4-1.9[1], Rules Regulating the Florida Bar, for three reasons.  The first is that it erroneously reads into subsection (b) the requirement from subsection (a) that matters be "substantially related."  The second is

---

[1] Rule 4-1.9 states, in its entirety:
    A lawyer who has formerly represented a client in a matter shall not thereafter:
    (a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
    (b) use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; ***or***
    (c) reveal information relating to the representation except as these rules would permit or require with respect to a client.
Rules Regulating the Florida Bar (emphasis added).

1

that the Order requires RCL to specify the confidential information possessed by Jonathan Aronson (hereinafter "Aronson") to establish that disqualification is warranted. In addition, the Order's interpretation of "substantially related" is overly narrow and clearly erroneous as applied to the facts of this case. As such, reversal and entry of an Order requiring Plaintiff's counsel's disqualification is required.

## MEMORANDUM OF LAW

### A.   STANDARD OF REVIEW

This appeal is brought pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Magistrate Rule 4(a)(1). A party may appeal to the district judge any pretrial non-dispositive matter ruled on by the magistrate judge. *Id*. A Magistrate Judge's order regarding non-dispositive matters must be reversed by the District Court Judge if it is "clearly erroneous or contrary to law." *Id.* An order is contrary to law when it "fails to apply or misapplies relevant statutes, case law or rules of procedure." *Tolz v. Geico General Ins. Co.*, 2010 WL 384745, at *2 (S.D. Fla. Jan 27, 2010); *see also Gunter v. Ridgewood Energy Corp.*, 32 F.Supp.2d 162, 164 (D.N.J. 1998) ("[a] finding is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law"). An order is clearly erroneous when the reviewing Court is "left with the definite and firm conviction that a mistake has been committed." *U.S. v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

### B.  THE INTERPRETATION OF RULE 4-1.9(b) IS CONTRARY TO LAW.

#### 1.   Rule 4-1.9(a) and Rule 4-1.9(b) Must be Read in the Disjunctive.

The Order requires reversal because it misinterprets and misapplies Rule 4-1.9. The Rule mandates disqualification of an attorney under three separate subsections, two of which – subsections (a) and (b) – are pertinent here. Subsections (a) and (b) are

2

written in the disjunctive which means that "an attorney may be disqualified from representing a client under *either* provision." *FMC Technologies, Inc. v. Edwards*, 420 F.Supp.2d 1153, 1158 (W.D. Wash. 2006) (emphasis added).  Thus, Aronson may be disqualified under *either* 4-1.9(a) *or* (b).

Subsection (a) requires an attorney's disqualification when that attorney seeks to "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent."  Subsection (b) requires disqualification to prevent an attorney from using "information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known."  The Order ignores the "or" between the subsections and holds that to prevail on a Rule 4-1.9 motion to disqualify, "the movant must establish: 1.) the existence of a prior attorney/client relationship . . . and 2.) that the matters in the pending suit are substantially related to the previous matter or cause of action."  (D.E. 74, page 6).  This is a clear misreading of the Rule because it incorporates the substantially related standard to subsection (b).

The Comments to the 2006 Amendments to Rule 4-1.9 (hereinafter "Comments") provide that "[i]n the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; *on the other hand, knowledge of specific facts gained in a prior representation that are **relevant** to the matter in question ordinarily will preclude such a representation.*"  *In re Amendments to the Rules Regulating the Florida Bar*, 933 So.2d 417, 446 (Fla. 2006) (emphasis added).  Subsection (b) requires knowledge of facts that are relevant to the

matter in question; not that they be "substantially related." The Comments also recognize the distinction between subsections (a) and (b) as it separately considers each. In discussing subsection (b) the Comments state that "the essential question is whether, but for having represented the former client, the lawyer would know or discover the information." *Id*. Here, the information RCL seeks to protect is not generally known and it would have been virtually impossible for Aronson to have learned it without having previously represented RCL.

By reading "substantially related" into subsection (b), the Order eviscerates one of three bases upon which disqualification may be sought. As written, subsections (a) and (b) of the Rule require disqualification when a subsequent representation involves the same case, a substantially related case, or when it involves information gained from the prior representation which may be used to the disadvantage of the former client. Thus, what is pertinent under subsection (b) differs from what is pertinent under subsection (a) and by confining its inquiry to the issue of whether Aronson previously represented RCL in a slip and fall arising from the proximity of a staircase to the Flo Rider surfing activity, the Order ignores this distinction.

In addition to eviscerating the import of subsection (b), the Order displaces the appropriate relevancy standard to be applied under subsection (b). In so doing, the Order fails to recognize that subsection (b) requires disqualification under the broader standard of relevance than the narrower substantially related standard of subsection (a). Relevancy is a low standard, requiring only the "tendency to make the existence of any fact that is of consequence . . . more or less probable than it would be without the

4

evidence." Fed. R. Evid. 401. To read subsection (a)'s standard into subsection (b) does away with an entirely separate and broader basis for disqualification under the Rule.

*Tuazon v. Royal Caribbean Cruises, Ltd.*, 641 So.2d 417 (3d DCA 1994), further demonstrates that (a) and (b) are to be read separately. In *Tuazon*, the plaintiff's attorney had previously worked as an adjuster for the defendant where he "adjusted, evaluated, investigated and handled claims on behalf of the Defendant." *Id*. at 418 n.1. As a result, the attorney was "privy to the confidential procedures and policies of the Defendant." *Id.* The Third District Court of Appeal held that such knowledge fell "squarely within the proscription of" Rule 4-1.9(b) and merited disqualification. *Id*. While *Tuazon* did mention that the matters were substantially similar, it stated that, under (b), the ultimate question was "does the information (not generally known) put the Defendant at an unfair disadvantage?" *Id*. In the current case, the answer to that question is undoubtedly "yes." As explained more fully *infra* pages 6-9, Aronson has knowledge of where the "bodies are buried" and he can use this knowledge against RCL to its disadvantage in this case.

RCL acknowledges that *Tuazon* was decided prior to the 2006 amendments to the Comments while *Morgan Stanley & Co., Inc. v. Solomon*, 2009 WL 413519 (S.D. Fla. Feb. 19, 2009), a case heavily relied upon by both Plaintiff's counsel and the Order, was decided after the amendments.[2] In *Morgan Stanley*, as in *Tuazon* before it, the Court

---

[2] Despite Aronson and Walker's contentions to the contrary, *Tuazon* remains good law and has been cited positively by this Court as recently as April 2010. *See Armor Screen Corp. v. Storm Catcher, Inc*., 2010 WL 1740697 (S.D. Fla. Apr. 22, 2010) (The Court maintained that the issue was whether the confidential information puts the party at a disadvantage. *Id*. at *12. In finding that it did, the Court stated, "[w]hile the facts are different, the *Tuazon* principle remains the same, and the Court chooses to follow it." *Id*. at *13.). The Third District Court of Appeal has also followed *Tuazon's* approach, requiring disqualification in inadvertent disclosure situations to protect the other party from any disadvantage this may cause. *See Abamar Housing & Development v. Lisa*

5

considered subsections (a) and (b) separately from one another, demonstrating that the amendments did not change the disjunctive nature of the two subsections. *Id.* Additionally, while the amendments eliminated the appearance of impropriety as a basis, standing alone, for disqualification, *Morgan Stanley* shows that the appearance of impropriety is still a relevant consideration. *Id.* at *6; *see also Armor Screen Corp. v. Storm Catcher, Inc.*, 2010 WL 1740697, *11 (S.D. Fla. Apr. 22, 2010) (stating, "the appearance of impropriety does not qualify as an *independent* ground for disqualification") (emphasis added).

### 2. Aronson Possesses Knowledge Relevant to this Matter.

As established by the affidavits and deposition testimony filed in support of RCL's motion to disqualify, Aronson possesses knowledge that is much more than "general" corporate knowledge that is generally known. He is aware of specific facts that are ***relevant*** to this matter and that will place RCL at a disadvantage. Aronson has knowledge of ***specific*** safety issues on RCL ships and of ***specific*** remedial actions RCL has either taken or considered to remedy these issues. (Faso[3] at 301-302). In fact, some of these remedial actions were suggested by Aronson himself. (Faso at 301-302). Aronson also helped develop RCL's strategies for keeping this information confidential, (*see* Affidavit of Amy Yarrow, at para. 9), and thus knows how to get around RCL's assertions of privilege or confidentiality. All of this information is clearly relevant to the

---

*Daly Lady Décor Inc.*, 724 So.2d 572, 574 (Fla. 3d DCA 1998) (requiring disqualification due to inadvertent disclosure based on the "unfair tactical advantage such disclosure provides").

[3] "Faso" refers to the August 16, 2010 Deposition of Salvatore Faso filed with this Court, followed by the appropriate page number.

6

current case because Aronson knows what to ask for from RCL and how to get around RCL's assertions of privilege.[4]

By virtue of his decade-long representation, Aronson has knowledge relating to RCL's internal operations, discovery strategy, case valuation, and approach to settlement – the same type of information which merited the attorney's disqualification in *Tuazon*. More importantly, Aronson is aware of specific "safety issues," confidential expert opinions, and RCL's strategic plans for keeping specific RCL information confidential. (Aronson 26, 58-60, 80; *see also* Faso at 289 ("legal advice that goes into maintaining the privilege [of RCL's secrets provides] advantages for one plaintiff attorney over another, knowing [the] previous advice that was given to the company relative to those documents and [their] privileged character."). RCL is only required to establish that Aronson possesses relevant information and it was erroneous for the Order to hold RCL to a higher standard than that required under subsection (b) of the Rule.

Additionally, a conclusion that Aronson possesses confidential information is discernable from RCL's heavy reliance upon him as outside defense counsel for a long period of time. As such, it is reasonable to conclude that he learned confidential and privileged information. As RCL's "trusted attorney," (Faso at 54), Aronson was privy to vast amounts of information. While working on 300 cases for RCL, Aronson participated in innumerable confidential conversations with witnesses, experts, RCL adjusters, and so on regarding cases like this one – i.e., a slip and fall on a ship. Aronson admits the confidential nature of these conversations, (Aronson at 50-53), and states that he would often tell witnesses that he was the "company attorney" and he was there "to help the

---

[4] RCL notes that relevancy is a question for the Court to decide. *See Sprint/United Management Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008).

7

company," (Aronson at 51-52), causing the witnesses to confide in him. Furthermore, RCL's adjusters would turn to Aronson for advice on claims that he was not even handling because of his breadth of knowledge about RCL. (*See* Affidavit of Stacy Stanley, at para. 4, stating, "[o]n many occasions, I would call Mr. Aronson about a claim that I was handling and ask his advice…[and] I would share with him my thoughts on the claim;" *see also* Affidavit of David Banciella, at para. 5).

The Comments demonstrate that there are two categories of information which are intertwined and mandate Aronson's disqualification. Firstly, there is the information acquired throughout the representation which is confidential due to the nature of the attorney-client relationship, but is not privileged and is potentially discoverable. Secondly, it must be inferred that along with this non-privileged information, the attorney acquired specific confidential information. In the example in the Comments to the Rule, an attorney who gained private financial information during his representation of a businessperson was prevented from subsequently representing that client's spouse in a divorce. Although the businessperson's financial information was not privileged and was discoverable, it was given to the attorney in confidence and the natural conclusion is that, along with this non-privileged information, the attorney was given relevant confidential and privileged information. Both types of information would not have been disclosed but for the attorney-client relationship and both can be used to a former client's disadvantage.

The situation in the Comments is analogous to the current case. In his capacity as RCL's attorney, Aronson was privy to general and specific non-privileged information relating to a wide range of issues that are pervasive to all types of claims filed against RCL. It necessarily follows that along with this information, Aronson was given

8

confidential and privileged information in his role as counsel. The only conclusion is that Aronson possesses confidential RCL information relevant to this case and his ability to recall that information puts RCL at a clear disadvantage. RCL is not required to wait until it is harmed by Aronson's use of this information to seek his disqualification. This is exactly the type of situation subsection (b) of the Rule serves to avoid.

The vast amount of knowledge Aronson possesses in his "vapid cranium" (Aronson[5] at 78), gives him a considerable tactical advantage over RCL which clearly violates subsection (b), even if it does not meet subsection (a)'s substantially related standard. This information is confidential and the Court can easily infer that it is relevant to this matter. As such, Aronson is obligated to keep that information confidential and not use it during a subsequent representation, such as in this case, to RCL's disadvantage.

### 3. The Case Law Cited in the Order is Inapposite.

The Order notes that "this case is more akin to *Morgan Stanley & Co., Inc. v. Solomon*," 2009 WL 413519, than *Tuazon*. (D.E. 74, page 10). This finding was derived from a factual error made by Magistrate O'Sullivan in reading *Tuazon*. The Order states that the instant case is distinguishable from *Tuazon* because "Mr. Aronson was never an employee of the defendant." (D.E. 74, page 9). While this is true – Aronson was hired as outside counsel for RCL – Magistrate O'Sullivan incorrectly classifies the attorney in *Tuazon* as an employee of his former client. (D.E. 74, page 9). In actuality, the attorney

---

[5] "Aronson" refers to the August 6, 2010 Deposition of Jonathan Aronson filed with this Court, followed by the appropriate page number.

9

previously "worked as a claims adjuster for Nautical Services, Inc., the local claims agent for the Defendant's insurer."[6]  641 So.2d 418 n.1.

Furthermore, analogizing this case to *Morgan Stanley*, a case involving an associate attorney who worked as outside counsel for Morgan Stanley, was erroneous because the facts are vastly different.  2009 WL 413519.  In *Morgan Stanley* the attorney worked on cases for his former client for a mere two years, handling only two arbitrations, whereas Aronson represented RCL for ten years on an estimated 300 cases, gaining an immeasurable amount of confidential information about RCL.  *Id*. at *1.  Ultimately, the attorney in *Morgan Stanley* was not disqualified under subsection (b) because he possessed only *general* information relating to his former client.  *Id*. at *6.  As RCL has shown, Aronson possesses more than a mere understanding of RCL's general policies and practices – he is aware of specific safety issues and confidentiality procedures that are directly relevant to this case.

## C.    THE MAGISTRATE'S RULING WAS CONTRARY TO LAW.

This brings to light the second point of error in the Order which requires proof of the privileged information to establish Aronson's disqualification.  As stated in the Comments, RCL is not required to reveal the confidential information learned by Aronson to "establish a *substantial risk* that the lawyer has confidential information to use in the subsequent matter."  *See* Comments to Rule 4-1.9, Rules Regulating the Florida Bar (Emphasis added).  All that is required is sufficient proof to allow the

---

[6] Additionally, both Aronson and the adjuster in *Tuazon* acted as agents for their respective employers.  However, Aronson's disqualification is more necessary than that of the adjuster because as an attorney, the scope of Aronson's agency was much broader because in all matters concerning the defense of RCL, Aronson was RCL's agent and any notice by or act committed in such representation was "accepted as the act of or notice to the client."  Rule 2.505(h), Florida Rules of Judicial Administration.

10

*conclusion* "about the possession of such information." That conclusion "may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." The reason for this is that requiring more specificity undermines the very purpose of the rule – to keep confidential information confidential. If, for instance, RCL were to disclose a particular design flaw, such information would waive any privilege attached to that information. Furthermore, the disclosure of information in this case would result in the information being used against RCL by Aronson in this case as well as by others in future litigation against RCL. It makes no sense to impose the degree of specificity required by the Order. That is what the Florida Supreme Court expressed in *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So.2d 630 (Fla. 1991).

In *K.A.W.*, the Florida Supreme Court rejected the need for particularized proof of confidential information because such information is protected. *Id*. at 633-34. It noted what is still pertinent today: that "[a] former client is not required to reveal the confidential information learned by the lawyer in order to establish a substantial risk that the lawyer has confidential information to use in the subsequent matter" and "[a] conclusion about the possession of such information may be based on the nature of the services the lawyer provided the former client and information that would in ordinary practice be learned by a lawyer providing such services." *Morgan Stanley & Co., Inc. v. Solomon*, 2009 WL 413519 at *5, *citing Health Care and Retirement Corp. v. Bradley*, 944 So.2d 508, 512 (Fla. 4th DCA 2006). Thus, under *K.A.W.* and the Comments, RCL is not required to specify the information it is trying to keep confidential in order to disqualify Aronson.

The Order ignores both *K.A.W.* and the Comments to the Rule.  The Order states that RCL "does not disclose the nature of the design flaw" and "[i]f the defendant believed the design flaw was substantially related to the instant case . . . it could have filed a copy of the complaint describing the accident." (D.E. 74 at 13, n. 4).  The Order is requiring exactly what *K.A.W.* and the Comments to the Rule expressly state that RCL does not need to provide.  Requiring such disclosure to establish disqualification undermines the very purpose of seeking disqualification in the first place and is directly contrary to the authoritative case law.

### D. THE INTERPRETATION OF RULE 4-1.9(a) IS CLEARLY ERRONEOUS

In denying RCL's motion for disqualification under subsection (a), the Order found that Aronson has not previously performed work for RCL which is substantially related to the current matter because "the facts of a slip and fall case are specific to each case" and none of Aronson's prior slip and fall cases involve proximity to the Flo Rider.[7] RCL agrees with Magistrate O'Sullivan that the facts of each negligence claim are specific to that case and acknowledges that Aronson never defended a claim for RCL involving the Flo Rider.  However, in limiting his definition of "substantially related" to claims involving identical facts and issues, Magistrate O'Sullivan ensures that no two matters will ever be substantially related unless they are in fact the same matter.[8]

---

[7] In the instant matter, Plaintiff alleges that she was injured when she slipped and fell on a staircase which was in close proximity to the Flo Rider surfing activity.

[8] RCL notes that other Courts have interpreted "substantially related" less narrowly and have denied equating it, as Magistrate O'Sullivan does, with "factually identical." *Kaselaan & D'Angelo Associates v. D'Angelo*, 144 F.R.D. 235, 243 (D. N.J. 1992); *see also Sunbeam Products v. Hamilton Beach Brands, Inc.*, 2010 WL 2928285, at *2 (E.D. Va. July 22, 2010) (stating that ethical rules are not to be applied "with hair-splitting nicety" and that the substantial relationship test "encompasses more than situations in which the issues are indistinguishable").

12

The Comments state, "[t]he scope of a 'matter' for purposes of rule 4-1.9(a) may depend on the facts of a particular situation or transaction. The lawyer's involvement in a matter can also be a question of degree." *Id.* The Order completely ignores this instruction, failing to consider that Aronson's ten year representation of RCL, on an estimated 300 cases, is vastly different from the *Morgan Stanley* attorney's prior representation of a client for a mere two years in two arbitrations. The scope of a matter as applied to Aronson must be broader because of the large degree of involvement Aronson had in multiple matters for RCL. The Order's failure to apply this distinction is clearly erroneous and contrary to law.[9]

---

[9] RCL is not requesting that Aronson be forever barred from bring suit against it because the passage of time may render much of the knowledge Aronson possesses obsolete. However, Aronson waited less than a year before bringing suit. RCL believes that this does not suffice as an adequate passage of time given the extent of Aronson's prior representation. Compare *Tuazon* with *Royal Caribbean Cruises, Ltd. v. Buenaagua*, 685 So.2d 8, 9-10 (Fla. 3d DCA 1996), where the same adjuster who was disqualified in *Tuazon* was not disqualified in *Buenaagua* due to the passage of time in the latter case.

13

## **CONCLUSION**

WHEREFORE, Defendant, Royal Caribbean Cruises Ltd., respectfully requests this Honorable Court enter an order reversing Magistrate O'Sullivan's denial of Defendant's First Amended Motion to Disqualify Plaintiff's Counsel, and enter an order disqualifying Plaintiff's counsel, Jonathan Aronson and James Walker, in this case.

        Respectfully submitted,

        MASE LARA EVERSOLE, P.A.
        *Attorneys for Defendant*
        2601 South Bayshore Drive, Suite 800
        Miami, Florida  33133
        Telephone:  (305) 377-3770
        Facsimile:   (305) 377-0080

        By:   *-s-Valentina M. Tejera*
            CURTIS J. MASE
            Florida Bar No. 478083
            cmase@mletrial.com
            SCOTT P. MEBANE
            Florida Bar No.: 273030
            smebane@mletrial.com
            VALENTINA M. TEJERA
            Florida Bar No.: 536946
            vtejera@mletrial.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 21st day of September, 2010, I filed this document electronically.  I also certify that the foregoing document is being served this day on all counsel of record or *pro se* parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

      /s/ Valentina M. Tejera _____
VALENTINA M. TEJERA

18114/285

## SERVICE LIST
### ROSEMARIE HERNANDEZ v. ROYAL CARIBBEAN CRUISES, LTD.
### SOUTHERN DISTRICT COURT OF FLORIDA
### MIAMI DIVISION
### Case No.: 10-21636-CV-HUCK/O'SULLIVAN

James M. Walker, Esq.
*Co-Counsel for Plaintiff*
Walker & O'Neill, P.A.
7301 S.W. 57th Court, Suite 430
South Miami, FL 33143
Telephone: (305) 995-5300
Facsimile: (305) 995-5310
**Email: jwalker@cruiselaw.com**

Jonathan Aronson, Esq.
*Co-Counsel for Plaintiff*
Aronson Law Firm
P.O. Box 565130
Miami, FL 33256
Telephone: (305) 665-8626
Facsimile: (305) 665-3429
**Email: jaronson@aronsonlawfirm.com**

Robert Michael Klein
*Counsel for Movant*
Stephens Lynn Klein. P. L.
9130 S Dadeland Boulevard, Penthouse I & II
Miami, FL 33156
Telephone: (305) 670-3700
Facsimile: (305) 670-8592
**Email: KleinR@stephenslynn.com**