UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.:  10-21636-CIV-Huck/O'Sullivan

ROSEMARIE HERNANDEZ,

    Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

    Defendants.
_____ /

**Aronson's Response to Royal Caribbean's Appeal of Magistrate O'Sullivan's Order Denying the First Amended Motion for Disqualification**

### Introduction

Royal Caribbean's appeal of Magistrate Judge O'Sullivan order denying its motion to disqualify Aronson asserts three alleged points of error: (1) the Magistrate erred in reading the "substantially related" provision of Rule of Regulating the Florida Bar 4-1.9(a) into subsection (b); (2) Royal Caribbean was not required to specify the confidential information that it alleges Aronson possessed — even if the matter was not substantially related; and (3) the Magistrate's interpretation of the substantially related test was "too narrow."

Royal Caribbean's arguments amount to little more than a rehash of the various shifting positions it has taken throughout these proceedings. Indeed, not only did Magistrate Judge O'Sullivan find Royal Caribbean's arguments unavailing, but Judge

Echarte, sitting in the State Court proceeding of *Kevin Chambers v. Royal Caribbean*,[1] found its position equally untenable after hearing argument on an identical set of motions. Adding random adjectives and adverbs or the inclusion of context-free deposition citations does not add credence to a losing argument.

As the authorities have shown, a party moving for disqualification may only receive the benefit of a reduced burden of proof where the predecessor and successor matters are substantially related; only then does the law *imply* disclosure of confidential information without direct proof. To hold otherwise would be to allow for disqualification via innuendo of *any* attorney who had previously represented a client continuously in a type of case. Here, Royal Caribbean never met its burden of demonstrating that Aronson was privy to information — whether confidential or not — which is relevant to this matter. Rather, after producing six affidavits and taking multiple depositions, it only managed to show that Aronson possessed general information that would have invariably emerged during the course of the litigation, or particularized, privileged information that was only relevant to other prior matters. Furthermore, Royal Caribbean's argument that Magistrate O'Sullivan's interpretation of the "substantially related" standard was too narrow is contrary to rules, record, and authorities.

## Argument

**I.   Magistrate Judge O'Sullivan properly concluded that Aronson should not be disqualified because Royal Caribbean failed to show that Aronson was aware of any confidential information that would prejudice it in the defense of this claim.**

---

[1] *See* transcript of hearing on Royal Caribbean's Motion to Disqualify, pp.50 - 51, exhibit 1.

As a prefatory matter, motions for disqualification are viewed with skepticism because disqualification impinges upon a party's right to employ their lawyer of choice, and such motions are often brought for tactical purposes.[2] Furthermore, because disqualification "strikes at the heart" of a client's right to choose their own attorney, it should be used only in extremely limited circumstances.[3] Rule Regulating the Florida Bar 4-1.9 provides that:

> A lawyer who has formerly represented a client in a matter shall not thereafter:
>
> **(a)** represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent;
>
> **(b)** use information relating to the representation to the disadvantage of the former client except as these rules would permit or require with respect to a client or when the information has become generally known; or
>
> **(c)** reveal information relating to the representation except as these rules would permit or require with respect to a client.

Traditionally, under Florida law, Rule 4-1.9 disqualification cases are governed by a two-prong test that predates the modern Rules of Professional Conduct requiring the moving party to show that "(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented

---

[2]   *Coral Reef of Key Biscayne Developers, Inc. v. Lloyd's Underwriters at London*, 911 So. 2d 155, 157 (Fla. 3d DCA 2005).

[3]   *Id.*

the former client."[4] Resolution of the first prong of this test has been held to give rise to an irrefutable presumption that confidences were disclosed between the parties.[5] But, absent a finding that the new representation is substantially related to the attorney's representation of the former client in a prior matter, disqualification is not warranted. That was the precise test that Magistrate O'Sullivan applied to this matter.[6]

Royal Caribbean's primary argument on appeal is that it believes Aronson generally possesses vast amounts of confidential information, thus warranting disqualification independently under Rule 4-1.9(b) — regardless of whether this matter is substantially related to Aronson's prior representation.[7] It argues that Magistrate O'Sullivan improperly read Rule 4-1.9(a)'s "substantially related" standard into subpart (b) thus eviscerating its purpose by subjecting Royal Caribbean to an allegedly heightened pleading standard.[8] Additionally, Royal Caribbean argues that it is under no obligation under the rules and the case law to proffer any particularized proof to support its contention that Aronson was in the possession of information that would prejudice it

---

[4] *State Farm Mut. Auto. Ins. Co. v. K.A.W.*, 575 So. 2d 630,633 (Fla. 1991); *Waldrep v. Waldrep*, 985 So. 2d 700,701 - 702 (Fla. 4th DCA 2008); *Health Care and Retirement Corp. of America Inc. v. Bradley*, 944 So. 2d 508, 511 - 512 (Fla. 4th DCA 2006; *Anderson Trucking Service, Inc. v. Gibson*, 884 So. 2d 1046, 1048 (Fla. 5th DCA 2004);); *JDI Holdings, LLC v. Jet Management, Inc.*, 2009 WL 3494182, No. 3:07cv242/MCR/EMT, (N.D. Fla. October 26, 2009); *In re Weinhold*, 380 B.R. 848, 852 (Bkrtcy. M.D. Fla. 2007).

[5] *See In re Weinhold,* 380 B.R. 848, 852 (Bkrtcy. M.D. Fla. 2007).

[6] *See* D.E. 74, p. 6 (citing *Bochese v. Town of Ponce Inlet*, 267 F. Supp. 2d 1240, 1244 (M.D. Fla. 2003)).

[7] *See* D.E. 78, p 9.

[8] *See* D.E. 78, p.4.

4

in the defense of this claim.[9] Thus, not only is it irrelevant under its theory as to whether a matter is substantially related for purposes of Rule 4-1.9(b), it is also under no obligation to actually connect the allegedly prejudicial information to this case with anything more than naked innuendo. A review of the authorities cited for this proposition belies this argument.  Contrary to RCL's position, the substantially related test is a relevant consideration in evaluating whether an attorney is using or in possession of confidential information detrimental to the former client.

A.  **Rule 4-1.9(b) does not mandate a complete disregard of the substantially related test; rather, the *only* means by which a party moving for disqualification is entitled to an evidence free presumption that Rule 4-1.9(b) has been violated is when it affirmatively demonstrates that the matters are substantially related.**

Royal Caribbean relies upon the Florida Supreme Court opinion in *State Farm Mut. Auto. Ins. Co. v. K.A.W.*[10] for the proposition that the Supreme Court "rejected the need for particularized proof of confidential information because such information is protected" in the setting of a disqualification motion.[11] Royal Caribbean argues that Magistrate O'Sullivan's "order is requiring exactly what *K.A.W.* and the Comments to the rules expressly state that [it] does not need to provide."[12] *K.A.W.*, however, was premised entirely upon application of the very test Royal Caribbean believes Magistrate O'Sullivan erroneously applied, which inherently requires a showing of a substantial relationship to obviate the evidentiary predicate.

---

[9]   *See* D.E. 78, p. 11.

[10]  575 So. 2d 630 (Fla. 1991).

[11]  D.E. 78, p. 11.

[12]  *Id.* at 12.

*K.A.W.* was decided several years after Florida adopted the modern Rules of Professional conduct.[13] Prior to 1987, the conduct of Florida attorneys was governed by the Code of Professional Conduct.[14] As previously noted, conflict of interest cases —like this one — were decided under the Code by using the two- part test requiring the moving party to show: "(1) an attorney-client relationship existed, thereby giving rise to an irrefutable presumption that confidences were disclosed during the relationship, and (2) the matter in which the law firm subsequently represented the interest adverse to the former client was the same or substantially related to the matter in which it represented the former client."[15] As the Florida Supreme Court observed, this was derived from the earlier Canon 4 of the code providing that an "attorney should preserve the confidences and secrets of a client" and Canon 9, which contained an explicit admonishment for counsel to "avoid the appearance of impropriety." [16]

The question decided in *K.A.W.* was whether the aforementioned two-part test continued to apply in light of the abandonment of the Code in favor of the Rules of Conduct.[17] The Supreme Court concluded that "we do not believe that a different standard now applies because the specific admonition to avoid the appearance of

---

[13]   575 So. 2d at 634, n. 2.

[14]   *Id.*

[15]   *Id.* at 633.

[16]   *Id.* (Cannon 9 is not explicitly named in the opinion, but it is described); *see Junger Utility & Paving Co., Inc. v. Myers*, 578 So. 2d 1117, 1119 n. 2 (Fla. 1st DCA 1989)(discussing Canons 4 and 9 in the setting of a Rule 4-1.9 disqualification)).

[17]   *K.A.W.*, 575 So. 2d at 633.

impropriety does not appear in the Rules of Professional Conduct."[18] The Court continued by holding:

> [T]he need for the irrefutable presumption continues to exist, just as under the former code. The presumption acknowledges the difficulty of proving that confidential information useful to the attorney's current client was given to the attorney. *It also protects the client by not requiring disclosure of confidences previously given to the attorney.*[19]

The Supreme Court cited an opinion from the Southern District of New York in support of this proposition and remarked parenthetically that the case held "if two actions are substantially related,[the] court will not require proof that [the] attorney had access to confidential information, nor give weight to [the] attorney's assertion that he had no access to and did not possess confidential information."[20] The Supreme Court concluded by remarking that "[a]ccordingly, we disagree with the court below that actual proof of prejudice is a prerequisite to disqualification under these circumstances."[21] Arguably, this case does not address any situation where a substantial relationship between existing and prior representation has not been shown to exist.

Notably, in trying to argue that subsection (b) should be considered entirely in a vacuum, Royal Caribbean argues that although "the amendments [to the Rules] eliminated the appearance of impropriety as a basis, standing alone, for disqualification . .

---

[18]   *Id.*

[19]   *Id.* at 634.

[20]   *Id.* (*citing Government of India v. Cook Indus., Inc.*, 422 F. Supp. 1057, 1060 (S.D.N.Y. 1976)).

[21]   D.E. 78, p.6.

7

. the appearance of impropriety is still a relevant consideration."[22] It then argues that the case of *Morgan Stanley & Co., Inc. v. Solomon* "did not change the disjunctive nature of the two subsections" (a) and (b)[23], but disregards the footnote in that opinion where Judge Marra opined that " to the extent the Rule [4-1.9(b)] requires a showing that the matters are substantially related, the Court has found no substantial relationship between the current arbitrations" and the prior representation. [24]

Royal Caribbean has also cited the case of *FMC Technologies, Inc. v. Edwards*[25] for the proposition that an attorney can be disqualified from representation under Washington State's analogue to Rule 4-1.9 under either section (a) or (b).[26] Indeed, while the *FMC* Court observed that "Rule 1.9(b) prohibits the use of confidences or secrets relating to the representation to the disadvantage of the former client, it is only when the matters are **substantially related**, as here, that "**actual proof of disclosure of confidential information is not necessary**."[27] Similarly, Magistrate Turnoff — in a Rule 4-1.9(a) disqualification case from the Southern District — noted that "*although the party seeking disqualification need not point to specific confidences relevant to the*

---

[22] *Id.*

[23] *Id.*

[24] *Morgan Stanley & Co., Inc. v. Solomon*, 2009 WL 413519, * 6 n. 4, No. 08-81330-CIV., (S.D. Fla. February 19, 2009).

[25] 420 F. Supp. 2d 1153 (W.D Wash. 2006).

[26] D.E 78, p.3.

[27] *FMC Technologies, Inc. v. Edwards*, 420 F. Supp. 2d 1153, 1161 (W.D Wash. 2006)(*quoting Teja v. Saran*, 846 P.2d 1375, 1379 (Wash. App. Div. 1, 1993))(emphasis supplied).

8

*pending case*, the party must nonetheless show that matters embraced within the pending suit *are substantially related* to matter or causes of action in which the attorney previously represented him."[28] In the pre-amendment case of *Boca Investors Group, Inc. v. Potash*, the Third District reversed a trial court order disqualifying a plaintiff's attorney who previously had a presuit meeting with representatives of the defendants. The Third District noted that there was an unresolved factual dispute over whether the meeting was merely a "job interview" where no confidences would have been disclosed or also included a discussion of the legal matters in the subject case "resulting in an attorney-client relationship and thus an irrefutable presumption that confidences were disclosed."[29]

Even the case of *Tuazon v. Royal Caribbean Cruises, Ltd.* — which Royal Caribbean insists is proof that subsections (a) and (b) are to be read as totally independent — refutes the very point it is trying to make.[30] The procedural posture of the case, *as acknowledged by Royal Carribbean*,[31] was the "certiorari review of an order disqualifying counsel on grounds that he had access **to confidential information as to substantially similar matters** brought by other seamen while previously acting as an adjuster for the cruise line."[32] In *Royal Caribbean Cruises, Ltd. v. Buenaagua*, the Third District refused to disqualify the same attorney from *Tuazon* as on the grounds that Royal

---

[28]   *Herrera-Shorthouse v. La Cubana Bail Bonds, Inc.*, 1999 WL 33266031, * 2, No. 98-1888-Civ, (S.D. Fla. July 14, 1999)(motion subsequently denied as moot).

[29]   728 So. 2d 825 (Fla. 3d DCA 1999).

[30]   641 So.2d 417 (Fla. 3d DCA 1994).

[31]   D.E. 78, p. 5.

[32]   *Id.* at 417 – 418 (emphasis supplied).

9

Caribbean did not demonstrate "the *substantial relationship* between these cases and any prior cases the attorney worked on. These factors remove [this case] from the scope of *Tuazon,* making *Tuazon* inapplicable."[33] If *Tuazon* is a rule 4-1.9(b) case, and the absence of a substantial relationship between a matter removes another case from its scope, then clearly, Rule 4-1.9(a) can have an impact on the outcome of a Rule 4-1.9(b) determination.

Taken together, it would appear as though the question of a substantial relationship has bearing on the threshold degree of proof required to establish disqualification under Rule 4-1.9(b), even if it is not an absolute requirement. It is clear that a blatant violation of Rule 4-1.9(a) will generate a presumption that confidences were disclosed under Rule 4-1.9(b) as seen in *K.A.W.* and even *FMC Technologies*. Under those circumstances "it is the possibility of the breach of confidence, not the fact of the breach, that triggers disqualification."[34] This is consistent with the commentary to Rule 4-1.9 which plainly prohibits representation where an attorney obtains "knowledge of specific facts gained in a prior representation that are relevant to the matter in question" as opposed to "general knowledge of the client's policies and practices" which is not disqualifying.[35] Although the commentary does not require the disclosure of confidential information to establish the risk that the Rule will be violated, without a substantial relationship between the present matter and the previous representation, it should not be

---

[33] 685 So.2d 8, 10 (Fla. 3 DCA 1996).

[34] *FMC Technologies, Inc.*, 420 F. Supp. 2d at 1161 (*quoting Trone v. Smith*, 621 F. 2d 994, 999 (9th Cir. 1980)(noting that a court will presume confidences have been divulged if the scope of the former representation encompasses issues raised in the later representation)).

[35] R. Regulating. Fla. Bar. 4-1.9 (cmt).

10

sufficient for Royal Caribbean to blithely state that Aronson "knows where the bodies are buried"[36] without even giving a clue as to how those corpses are relevant to the present matter.

**B.      Royal Caribbean failed to meet its burden of proof in establishing a violation of Rule 4-1.9.**

Comparing the case of *Armor Screen Corp v. Storm Catcher Inc.* to this matter demonstrates precisely why Royal Caribbean failed to meet is burden of proof.[37] There, a novel disqualification issue came before Judge Ryskamp and Magistrate Judge Vitunac in a patent case: "whether an attorney who discusses a case as a potential expert for a party, but who is never retained, should be disqualified from later becoming counsel for the opposing party **in the same case**."[38]  Judge Ryskamp ultimately upheld Magistrate's Vitunac's decision to disqualify the attorney based upon the case of *Tuazon v. Royal Caribbean* and Rule 4-1.9.[39] He noted that:

> As Judge Vitunac recognized, *Tuazon* stands for the principle that when an attorney, although acting in a non-attorney capacity at the time, obtains confidential information from a party (information that puts that would put that party at an unfair disadvantage if the attorney were to represent the other side), that attorney may not later represent the ***other side in that same case.*** [40]

---

[36]     D.E. 78, p. 5.

[37]     2010 WL 1740697, No. 07-CV-81091, (S.D. Fla. April 22, 2010).

[38]     *Id.* at * 2.

[39]     *Id.*

[40]     *Id.* (emphasis supplied).

11

There, the party moving for disqualification also attempted to argue that the appearance of impropriety could be used an independent basis for disqualification separately from Rule 4-1.9 in reliance upon the *K.A.W.* opinion. Magistrate Vitunac, however, disagreed.[41] In discussing the use of the appearance of impropriety standard described in *K.A.W.*[42] she observed that it:

> was made only in the context of affirming the same two-prong test, and particularly the irrefutable presumption. . . .This Court does not read the decision as retaining the appearance of impropriety standard and respectfully disagrees with those courts that do. . . the appearance of impropriety does not qualify as an independent ground for disqualification in this case.[43]

Magistrate Judge Vitunac then evaluated the case under the auspices of Rule 4-1.9. She observed that *Tuazon* principle was applicable, noting that "as in Tuazon, [the attorney] has been privy to confidential information pertaining to Defendants *in this case*."[44] Magistrate Vitunac then observed that there was extensive evidence in the case before her that the parties discussed discrete issues germane to it, including issues related to an earlier use of the subject invention years before a patent filing, conflicting opinions of various PTO examiners, inherency, and the identity of a possible co-inventor that was

---

[41]   *Id.* at * 9.

[42]   *Id.*

[43]   *Id.* at * 10.

[44]   *Id.* at * 13.

not generally known.[45] Magistrate Judge Vitunac repeatedly noted that the confidential information disclosed was relevant to that case.[46]

The difference between the evidence discussed in *Armor* and the evidence presented by Royal Caribbean is worlds apart. Royal Caribbean remarks generally that Aronson "is aware of specific facts that are ***relevant*** to this matter that will place [Royal Caribbean at a disadvantage" and that he has "knowledge of ***specific*** safety issues on RCL ships and of ***specific*** remedial actions [Royal Caribbean] has either taken or considered to remedy these issues."[47] But never once has it identified what these nebulous issues are or how they bear on this matter. As Magistrate Judge O'Sullivan observed, Royal Caribbean filed six affidavits in this cause; yet <u>none</u> of them suggested that Aronson had ever worked on a slip and fall case near or involving a Flow Rider.[48] Furthermore, of the affidavits filed by Royal Caribbean, only one was from a guest-claims adjustor; the others were from crew-claims adjustors and an in-house attorney who did not start working for Royal Caribbean until 2008, thus rendering their evidentiary value to this matter dubious.[49] This was further compounded by the fact that Royal

---

[45]   *Id.* at * 12.

[46]   *Id.* at * 13, 14,

[47]   D.E. 78, p. 6.

[48]   D.E. 74, pp. 7 – 8.

[49]   *See Aronson's response in opposition to first amended motion to disqualify*, D.E. 54, pp 8 – 14.

Caribbean had effectively phased Aronson out as one of its outside defense counsel over the course of the three years preceding his decision to start trying plaintiff's cases.[50]

Royal Caribbean argues this matter should be governed by the general relevance standard under the rules of evidence.[51] But with only innuendo as its proof, Royal Caribbean left the Court with no way to determine whether the previously obtained information is truly relevant here. Arguably, even under its own proposed standard, Royal Caribbean would fail to establish a basis for disqualification. Yet it also argues that it cannot disclose any specific information because the information would lose its privileged status if disclosed to the Court in these proceeding. This argument disregards the numerous measures Royal Caribbean could take to bring these issues to the Court's attention, such as an *in camera* proceeding.[52] If anything, Royal Caribbean gave Magistrate O'Sullivan little choice but to deny its motion as it never showed a substantial relationship between this case and other prior matters handled by Aronson, and never tried to present <u>any</u> evidence showing that Aronson was privy to confidential information

---

[50] *Id.* at p. 11.

[51] D.E. 78, pp. 4 -5.

[52] *See, e.g.*, *RJSG Properties, LLC v. Marbella Condominium Developers, LLC*, 2009 WL 3581637, * 2, No. 3:08cv302/MCR/EMT., (N.D. Fla. October 28, 2009)(in evaluating documents submitted *in camera* on disqualification motion, court remarked that "[i]n reciting the facts that bear on the present disqualification controversy and in making its rulings . . . in this order, the court does not reveal any arguably confidential or privileged information submitted in camera."); *Preferred Care Partners Holding Corp. v. Humana, Inc.*, 2009 WL 982456, no. 08-20424-CIV., (S.D. Fla. April 10, 2009)(showing use of in camera inspection to determine whether certain documents were protected under the attorney-client privilege).

which would have a direct bearing on this matter, other than vague affidavits — five of which are of limited value.[53]

This brings the arguments presented by Royal Caribbean back to where they were when it initiated the very first motion for disqualification. Royal Caribbean is inherently relying upon a quantitative analysis by suggesting the sheer volume of cases that Aronson represented Royal Caribbean in, along with the general advice he gave, provides sufficient basis for disqualification. Aronson was deposed in one of the sister suits to this disqualification action — *Chambers v. Royal Caribbean* — and was asked numerous questions about incident reports filed in other discrete cases. Occasionally, he was able to prevent disclosure of these unique reports. In doing so, Royal Caribbean successfully showed that Aronson "participated in innumerable confidential conversations with witnesses, experts, RCL adjustors, as so on regarding cases like this one – i.e. a slip and fall on a ship."[54] This information is certainly relevant — and might be privileged — but only in the specific cases where this highly particularized information was generated. Such knowledge has no bearing on Rosemarie Hernandez's individual case.

Indeed, adoption of Royal Caribbean arguments would run completely contrary to the holdings in cases like *Health Care and Retirement Corp. of America, Inc. v. Bradley*[55] and *Morgan Stanley*. *Bradley* involved an attorney who represented a single nursing

---

[53] *See* Aronson's Response in opposition to Motion to Disqualify, D.E., D.E. 54, pp 8 – 14.

[54] D.E. 78, p.7.

[55] 961 So. 2d 1071 (Fla. 4th DCA 2007).

15

home client in 60 cases over a three year period.[56] He left his former firm in December of 2004 and within a month of doing so started representing plaintiffs.[57] On August 24, 2005 he filed a complaint on behalf of an injured plaintiff against the nursing home, which promptly moved for disqualification.[58] The Fourth District, in affirming the trial court's denial of the motion to disqualify, observed that the attorney handled a "type of problem" for [the nursing home] - negligence cases involving patients who suffered from pressure ulcers or falls" and "unlike two products liability cases involving the identical product, **each negligence case turns on its own facts**."[59] Conversely, Royal Caribbean would have this Court believe that information disclosed during the course of unrelated cases should have a disqualifying effect here. If each negligence case turns on its own facts, then it is irrelevant what information Aronson obtained in those cases. As Magistrate O'Sullivan correctly observed, Royal Caribbean failed to meet its burden of proof. His order should be adopted.

**II.     Royal Caribbean's argument that Magistrate Judge O'Sullivan misinterpreted the scope of Rule 4-1.9(a) is contrary to the weight of the post-2006 commentary and interpretative cases finding that "substantially related" does not mean handling recurrently handling a type of case.**

Royal Caribbean finally argues that Magistrate O'Sullivan erred by limiting the definition of substantially related to claims involving identical facts and issues. Rather, it advocates for a standard where substantially related can be invoked in the same species of

---

[56]    *Id.* at 1072.

[57]    *Id.*

[58]    *Id.*

[59]    *Id.* at 1074.

claim. In reliance, it cites a case from New Jersey and a case from Virginia. Notably, this was the argument that Royal Caribbean primarily raised — and largely abandoned — in its original motion to disqualify. The reason being was quite apparent: the current commentary to the rule abolished the standard Royal Caribbean has advocated for.

To reiterate, under Rule 4-1.9(a), an attorney who has previously represented a client in a matter cannot subsequently "represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of a former client unless the former client gives informed consent".  A standing qualification to this rule prohibits disqualification of a "lawyer who recurrently handled a type of problem for a former client" who then later represents "another client in a wholly distinct problem of that type even though the subsequent representation involves a position adverse to the prior client."  The 2006 commentary to Rule 4-1.9 further narrowed the reach of "substantially related" to matters that "involve the same transaction or legal dispute, or if the current matter would involve the attorney attacking work performed for the former client."[60]

Examples of this standard in operation abound. In *Armor*, the expert attorney was provided confidential information by a party in the same case he was retained to litigate, thus mandating disqualification.[61]  In *Sears, Roebuck & Company v. Stansburry* an attorney who defended Sears in a product defect lawsuit involving a lawnmower was

---

[60] *In re Amendments to the Rules Regulating the Florida Bar*, 933 So. 2d 417, 445 (Fla.2006); *Health Care and Retirement Corp. of America, Inc. v. Bradley*, 961 So. 2d 1071, 1073 (Fla. 4th DCA 2007).

[61] 2010 WL 1740697, No. 07-CV-81091, (S.D. Fla. April 22, 2010).

precluded from switching sides and filing plaintiff's actions against Sears for defect claims involving the same lawnmower. [62]

In contrast, *Morgan Stanley* and *Bradley* involved attorneys who handled a "type of problem" for a client and switched sides in subsequent cases of the type they previously defended. In the case of *Morgan Stanley*, it was arbitrations involving securities.[63] In *Bradley*, it was cases involving pressure ulcers and negligence in nursing home. In each case, handling a recurrent type of problem for the client was insufficient to obtain disqualification.[64] Royal Caribbean's interpretation would run afoul of those cases as well as the commentary to the Rule. Magistrate Judge O'Sullivan order should be adopted by this Court.

## Conclusion

As Magistrate Judge O'Sullivan noted, the party moving for disqualification carries the burden of proof.[65] Royal Caribbean has now advocated in three different cases for a standard that would ensure disqualification of virtually any counsel previously retained for any appreciable length of time by an institutional client and requires virtually no proof. It should come as no surprise that it has now lost this argument twice.

There is no error in the Magistrate Judge's order. As the authorities demonstrate, evaluating the substantial relationship between matters is a critical — and in many cases

---

[62]    374 So. 2d 1051 (Fla. 5th DCA 1979)(decided under the Code of Professional Conduct)

[63]    *See* WL 413519, No. 08-81330-CIV., (S.D. Fla. February 19, 2009).

[64]    *See* 961 So. 2d 1071 (Fla. 4th DCA 2007).

[65]    D.E. 74, p. 1.

dispositive — aspect of determining whether confidences are disclosed as described in Rule 4-1.9(b). To this end, Royal Caribbean's argument that it should be entitled to a presumption that confidences are disclosed without establishing a substantial relationship cannot be supported. Indeed, all of the authorities establishing such a presumption hinges upon a finding of a substantial relationship. Royal Caribbean failed to meet its burden of proof and its new arguments amount to little more than an excuse as to why it failed to meet its burden. Finally, the Rule and the supporting authorities show that Magistrate O'Sullivan's interpretation of the substantially related standard was correct. Therefore, Royal Caribbean's arguments should be rejected and the Magistrate O'Sullivan's Order accepted.

## Certificate of Service

I HEREBY CERTIFY that a copy of the foregoing was filed with the Clerk of the Court and served on the following by using the CM/ECF system on October 4, 2010 to: Curtis J. Mase, and Valentina Tejera, Esq., Mase, Lara, Eversole, P.A., 2601 S Bayshore Drive, Suite 800, Miami, FL 33133 and James M. Walker, Esq. Walker & O'Neill, P.A., 7301 S.W. 57th Court, South Miami, Florida 33143.

STEPHENS, LYNN, KLEIN, P.L.
Attorneys for Jonathan Aronson
9130 S. Dadeland Blvd., PH II
Two Datran Center
Miami, Florida 33156
Telephone: (305) 670-3700
Email: kleinr@stephenslynn.com

By: /s/ Robert M. Klein
    ROBERT M. KLEIN
    Florida Bar No. 230022